ISIDOR PANITZ *v.* GUSTAVE B. WEBB.

*Cross-examination of Witness—Scope—Discretion of Court—Injury By Automobile—Pedestrian at Street Crossing—Semaphore Directing Traffic.*

In an action for personal injuries, plaintiff's physician having testified in chief merely as to plaintiff's condition immediately after the accident as a result thereof, it was proper to exclude a question on his cross-examination as to a sprain suf-

fered by plaintiff at a later time, not connected with the accident, which the witness had not mentioned and of which, so far as appeared, he was ignorant.　　　　　　　p. 80

The general rule that a witness, other than a party, may only be cross-examined upon matters and facts upon which he has been examined in chief, and upon such matters as are likely to affect his credibility, test his memory or knowledge, show his relations to the parties or the cause, his bias, or the like, is subject to qualifications and exceptions, and its application in particular cases must largely be committed to the discretion of the trial court, the ruling of which in respect thereto will not be disturbed in the absence of anything to show an abuse of that discretion.　　　　　　　pp. 80, 81

In an action on account of injuries caused plaintiff, a pedestrian, by defendant's automobile, as it turned into the street which plaintiff was crossing, at a point where there was a traffic officer and semaphore, an instruction that if she was crossing when the semaphore said "go," the jury might find that plaintiff had the right of way, and if the accident was caused by defendant's failure to give her the right of way, their verdict should be for plaintiff unless she was guilty of contributory negligence, was erroneous, plaintiff's right of way being not absolute but relative, and depending not alone on the direction from the traffic officer, but on that in connection with other facts, such as when she started to cross the street, or did something to indicate that she intended to cross.　　　　　　　pp. 82-84

In exercising the right to proceed, in accordance with the invitation extended to both by the traffic officer, each was bound to use that degree of care and caution to avoid inflicting or receiving injury which persons of ordinary care or prudence would have used under like circumstances.　　　　　　　p. 82

It is the duty of one operating an automobile on a city street at a point where pedestrians have a right to be, constantly to exercise the utmost vigilance to anticipate their presence, and to have the machine under such control, and to so operate it, as to avoid injuring them while in the lawful use of the highway in the exercise of reasonable care.　　　　　　　p. 82

Since Code, art. 56, section 209, the only statute defining the relative rights of pedestrians and motor vehicle operators

at street crossings, expressly excepts from its operation crossings controlled by traffic officers, at such crossings the relative rights and obligations of such persons, as they have been fixed by the common law, remains unchanged.                    p. 84

In an action for injuries to plaintiff, a pedestrian, at a street crossing, caused by defendant's automobile, error in the grant of a prayer, to the effect that plaintiff had the right of way if she was crossing at a time when the semaphore said "go," was not cured by a statement in the prayer that she could not recover if her own negligence contributed to the accident, since the jury could not well find her guilty of negligence if she did what the court instructed them she had the right to do.

pp. 85, 86

*Decided November 4th, 1925.*

Appeal from the Superior Court of Baltimore City (STEIN, J.).

Action by Gustave B. Webb against Isidor Panitz. From a judgment for plaintiff in the sum of three thousand dollars, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Charles F. Harley,* with whom was *Michael James Manley* on the brief, for the appellant.

*Clifton S. Brown,* with whom was *J. Lawrence Sellman* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Gustave B. Webb, the appellee in this case, was struck and injured by the appellant's automobile shortly after six o'clock on the evening of November 16th, 1923, as she was crossing Linden Avenue, where it intersects North Avenue in Baltimore City. North Avenue runs east and west, and at that point Linden Avenue, running northwest and southeast, intersects North Avenue at a wide angle, and along each

avenue there is a double track street railway. A short dis-
tance east of Linden Avenue and adjacent to the west-bound
tracks on North Avenue there is a "safety zone" for the
accommodation of passengers boarding or leaving street cars
west-bound at that point.

At that hour the traffic at the intersection was under the
control of a traffic officer who operated a "semaphore," or
"Stop and Go," signal, located in the angle formed by the
south-bound Linden Avenue car tracks with the west-bound
North Avenue car tracks.

Mrs. Webb alighted from a west-bound North Avenue
car in the "safety zone" for the purpose of transferring to a
south-bound Linden Avenue car. When the traffic permitted,
she crossed to the north sidewalk of North Avenue, and
walked a short distance west to the curb on the east side
of Linden Avenue, where she waited until the west-bound
traffic on North avenue was released by the traffic officer.
She then, according to her testimony, started across Linden
Avenue to take a south-bound car, and had taken a couple
of "strides" when she was struck and injured by the appel-
lant's automobile, which had turned into Linden Avenue
from North Avenue and was going north.

The only eye witness of the accident offered on behalf of
the appellee was Mrs. Webb herself, who gave in substance
this testimony: "I watched the semaphore all the time so as
to see when he would give me the right of way, and when he
turned, giving me right of way I glanced towards North
Avenue, just a casual glance, and then saw nothing coming,
and started right over, and I got probably about—just a
couple of strides, and this—something—some one hollered,
'Look out, there' (clapping hands), and at the same time
I got this awful crash in my back, and I was thrown some
distance up North Avenue—up Linden Avenue, rather."
She further testified that the front part of the car hit her
on her left side, that she was thrown about twelve or fifteen
feet, and that when she "landed" her head was facing north
up Linden Avenue; that she heard no horn blown, but that

right after the accident Mr. Panitz, a colored boy, and "another man" said, "We blew the horn." On cross-examination she added that the weather was perfectly clear, that there was plenty of light on that occasion, that she had a transfer in her hand and expected to ride from Linden and North Avenues to the corner of Laurens and Linden; that when she first saw the Linden Avenue car it was at Ducatel Street, a block above North Avenue, standing still, and when she last saw it, it was coming down Linden Avenue towards North Avenue and far enough away for her to "get across there without hurrying." There was other testimony relating to the character and extent of Mrs. Webb's injuries, as well as evidence tending to corroborate certain parts of her testimony concerning her movements before the accident.

On behalf of the appellant there was evidence tending to show that, when his automobile, in which he and his brother were riding and which was being driven by a colored boy going west on North Avenue, approached Linden Avenue, the traffic sign read "Stop," and they stopped, and that when the traffic officer told them to go they "started all over again and turned the corner very slow"; that they had just started, and after they had turned the corner he "saw a lady on the sidewalk, she was standing still near the curb, and suddenly this lady began to run; she began to run right into them, that the front base of the car had already passed her"; that when she began to run the appellant "was almost tempted to shove the lady back with" his hand, but he was afraid he would hurt her, and he "hollered to the boy, Jerome, 'Quick, stop the car,' and he did instantly"; that before she started across Linden Avenue, which is a narrow street, she was standing on the pavement at the northeast corner of North and Linden Avenues, so near that he could almost "reach out"; that "she ran right into the back of the car at the fender on the right side"; that after striking her the automobile stopped within a few feet and that then she was back of the car near the curb; that she was "just like a per-

son standing on the sidewalk, and all of a sudden she started to run"; that when the accident occurred the automobile was going at the rate of from three to five miles an hour, and that they blew their horn as they turned the corner.

Following the accident, this action was brought by Mrs. Webb against the appellant in the Superior Court of Baltimore City, where it was tried before a jury. The trial resulted in a verdict and judgment for the plaintiff, and from that judgment the defendant took this appeal, which submits for our consideration two exceptions.

Mrs. Webb, in the course of her testimony, after describing the injuries which she said she had suffered as the immediate and direct result of the accident, said that about a couple of months before the trial, as she was rising from a chair, a muscle in her back contracted and she began to fall, and in trying to "right" herself she sprained her ankle. Dr. Herbert E. Zepp, a physician, who attended Mrs. Webb for her injuries, was called to describe them to the jury. His testimony in chief was confined to a description of her physical condition as he found it upon an examination made immediately after the accident, and its consequences. On his cross-examination he was asked this question, "* * * Now, Doctor, a sprained ankle,—is that sprained ankle the result of this injury, too?" which the Court refused to allow, and that ruling is the subject of the first exception. The question was obviously improper and we find no error in this ruling. There is nothing in the record to indicate that the witness had ever heard of Mrs. Webb's sprained ankle, he certainly had given no testimony concerning it, nor was there anything in the record to connect it in any way with the injuries resulting from the accident. The general rule in American courts, and one which has been adopted in this state, is that a witness, other than a party, may only be cross-examined upon matters and facts upon which he has been examined in chief, and upon such matters as are likely to affect his credibility, test his memory or knowledge, show his relations to the parties or the cause, his bias, or the like.

There are qualifications and exceptions to this rule, and its application in particular cases must largely, as a matter of practical expediency, be committed to the sound judicial discretion of the trial court, and its ruling in respect thereto, in the absence of anything to show an abuse of that discretion, will not be disturbed. *Murphy v. Stubblefield,* 133 Md. 30.

The second exception relates to the court's ruling on the prayers. At the conclusion of the whole case the court granted two prayers for the plaintiff, the first as offered, and the third as modified. The third is the damage prayer usually offered in cases of this character and was in our opinion properly granted.

The substantial question raised by the appeal, however, grows out of the court's action in granting the plaintiff's first prayer, by which the jury were instructed that if they found from the evidence "that the plaintiff was struck by the defendant's automobile as she was in the act of crossing Linden Avenue at the street crossing on the north side of North Avenue at a time, if the jury so find, when the semaphore indicated "Go" to the plaintiff, they may find that she had the right of way over the defendant's automobile; and if the jury further find that the accident was caused by the defendant or his agent failing to give the plaintiff the said right of way, then their verdict shall be for the plaintiff (unless they further find that the plaintiff was guilty of negligence that directly contributed to the accident)." That was not in our opinion a correct statement of the law applicable to the facts before the jury, and under the circumstances of this case the jury may well have been misled by it to the defendant's injury.

It is based upon the theory that the jury were at liberty to find from the single fact that the "semaphore indicated 'Go'" to the plaintiff, that she thereby acquired a "right of way over the defendant's automobile," and an absolute right to proceed in the direction indicated by the signal regardless of any other fact or circumstance, and that is not, as we

understand it, the law of this State applicable to the facts. and circumstances surrounding the occurrence of the accident which is the basis of this action. The plaintiff may, indeed, at the time she was struck, assuming her own testimony to be true, have had the right of way over the defendant, but if she had, she acquired it, not from the direction of the traffic officer alone, but from that in connection with other facts, such as that she had actually accepted that invitation, and was, when approached by the defendant's automobile, in such a position that the operator thereof should by the exercise of reasonable care have known of her peril in time to have avoided striking her.

The "right of way," as the expression is used in that prayer, must mean the right to proceed. That right, unless made so by statute, was not absolute, but relative, and the direction of the traffic officer, inviting both the appellant and the appellee to proceed, did not give to either of them a right to proceed superior to that given to the other. In exercising the right to proceed, each of them was bound to use that degree of care and caution to avoid inflicting or receiving injury which persons of ordinary care and prudence would have used under like circumstances. The degree of care required of each of them was the same, although the manner of its exercise differed because of the objects to which it was applicable. The pedestrian was unlikely to inflict injury upon others and therefore, in accepting the invitation to cross the street, her principal concern was to avoid injury to herself. It was therefore incumbent upon her to use reasonable care to avoid placing herself in such a position that others operating such dangerous agencies as motor vehicles. in the lawful use of the highway, and in the exercise of reasonable care, might be unable to avoid injuring her. It was, however, the duty of the defendant and his agents, operating a powerful and heavy automobile on a city street at a point where pedestrians had a right to be, to constantly exercise the utmost vigilance to anticipate their presence, and to have the machine under such control and to so operate it as to

avoid injuring them while they were in the lawful use of
the highway in the exercise of reasonable care. Applying
these general principles to the facts of this case, when the
traffic signal released the east and west bound traffic on
North Avenue, the plaintiff was permitted to cross Linden
Avenue, and the defendant to turn into Linden Avenue and
proceed north. If, while the automobile was far enough
away to permit the driver thereof by the exercise of reason-
able care and caution to have discovered her intention and
to have avoided striking her, the plaintiff had actually ac-
cepted the invitation to cross the street, and was crossing it,
she had the right to continue her course without interrup-
tion, and to assume that the driver of the automobile would
respect her right to proceed. If on the other hand she had
not started across the street until the automobile had reached
such a position that the driver thereof could not by the ex-
ercise of every reasonable care and precaution have discov-
ered her intention to cross the street in time to have avoided
striking her if she attempted to cross it, then the driver had
the right to proceed and to assume that she would not leave
a place of safety asd place herself where he could not by the
exercise of all reasonable care and caution avoid striking
and injuring her. The rights of each were relative and re-
ciprocal. Each was bound to anticipate the presence of the
other, and to take cognizance of the physical properties of
the machine operated by the defendant's agent, as well as of
the fact that the invitation given by the traffic signal was to
both of them. But the prayer ignored those considerations.
By it the jury were told that if at a time when the sema-
phore read to her "Go," the plaintiff was in the act of cross-
ing Linden Avenue, they might find that she had the right
of way over the defendant's automobile, without regard to
where it was or where she was at the time she started to
cross the street. Whether she did or did not have the right
of way must to some extent have depended on when she
started to cross the street, or did something to indicate that
she intended to cross it. If she ran into or stepped directly

in front of a moving automobile without indicating in any way her intention to cross in time to have permitted the driver thereof by the exercise of ordinary care to have learned of her intention in time to avoid striking her, it would be absurd to say that she had the right of way over the automobile, even if the traffic signal did indicate "Go" to her. And yet literally construed, the prayer even under such circumstances permitted the jury to find that she did have the right of way, and to find the defendant guilty of negligence if he failed to yield it to her. No authority has been called to our attention in support of that theory, and we have been able to discover none.

The only statute in force in this state, defining the relative rights of pedestrians and persons operating motor vehicles at street crossings, expressly excepts from its operation crossings controlled by traffic officers (C. P. G. L. of Md., art, 56, sec. 209), and at such crossings therefore the relative rights and obligations of such persons as they have been fixed by the common law remain unchanged. That section of the Motor Vehicle Law, which was formerly codified as section 163, article 56, C. P. G. L. of Md. (1912), as enacted by chapter 687 of the Acts of 1916, did not contain any reference to the relative rights and duties of pedestrians and the operators of motor vehicles at street crossings. As repealed and re-enacted by chapter 85 of the Acts of 1918, the section gave to pedestrians an absolute right of way at street crossings in the towns and cities in this state, and the appellant argues that no subsequent statute has deprived them of that right. But chapter 506 of the Acts of 1920 in terms repeals and re-enacts that section with an amendment, which as stated above expressly excepts from its provisions street crossings where the traffic is under the control of a traffic officer. And since the Act of 1918 is no longer in force, and since the only statute in force relating to the subject in the most explicit manner excepts from its operation street crossings where the traffic is controlled by traffic officers, it is difficult to see the point of the appellee's contention. The

appellee also relics upon the case of *Riddell v. Lyon*, 124 Wash. 146, 213 Pac. 487, but an examination of that case discloses nothing in conflict with the views which we have stated. In that case a pedestrian moving east with the traffic in obedience to the direction of the traffic officer had crossed the center of the street when the officer released the north and south traffic. An automobile driven along the street which he was crossing struck and injured him. Under those circumstances it was held that under a statute providing that "pedestrians shall have the right of way at street intersections and crossings except * * * that at crossings where a traffic officer is in control of the traffic they shall cross with the released traffic and not otherwise," that if the pedestrian had before attempting to cross received no warning of the approach of the defendant's automobile that he had the right of way. But aside from the statute that case differs from this in these facts: there the plaintiff had without any warning of the approach of the defendant's automobile actually crossed the greater part of the street before the defendant's automobile was authorized to proceed at all, while here, according to the defendant's testimony, he not only gave warning of his approach, but the appellee did not start to cross the street at all until the front of his car had passed her, and then she ran into the rear part of it. Of course the weight of this testimony was for the jury, but the defendant was at least entitled to have the jury consider it.

The prayer, it is true, provided that the plaintiff could not recover if her own negligence contributed to the accident. But that general expression was not in our opinion sufficient to correct the error in the preceding part of it by which the jury were told that they could find that the appellee had the "right of way over the" appellant's automobile if she was crossing the street "at a time" when the semaphore said "Go," for it may be inferred from the evidence that it still said "Go" when, according to the appellant's testimony, she ran into his automobile. And the jury could not well

have found her guilty of negligence in proceeding to do what the court instructed them she had a right to do.

For the reasons stated it follows that the judgment appealed from must be reversed for the error involved in granting this prayer.

> *Judgment reversed with costs to the appellant and case remanded for a new trial.*