## ISIDOR PANITZ *v.* GUSTAVE B. WEBB.

*Injury by Automobile—Pedestrian Crossing Street—Evidence*
*—Instructions.*

If the driver of an automobile, when about to turn into a
cross street, fails to give any signal, a pedestrian crossing that
street is not guilty of contributory negligence because she fails
to look up and down the street from which the car is turning.

p. 642

A pedestrian, injured at a street crossing by an automobile
turning into the street from an intersecting street, was not
guilty of contributory negligence if she started to cross when
the automobile was far enough away to permit the driver to
discover her intention to cross in time to avoid striking her.

pp. 642, 643

In an action for injury by defendant's automobile to one who
was undertaking to cross at a street crossing, evidence that the
automobile turned into that street from an intersecting street
without giving any signal was sufficient to send the case to the
jury. p. 643

Testimony by plaintiff, injured, while walking across a street
at a street crossing, by defendant's automobile turning into the
street from an intersecting street, that she did not hear any
signal, was evidence sufficient to go to the jury tending to show
that no signal was given. p. 643

Where plaintiff testified that she started to cross the street at
a street crossing when the traffic signal was given to "go," and
defendant testified that he started his car to turn into that
street at the same signal, it was a question for the jury whether
defendant was not negligent in failing to see plaintiff in time
to avoid an accident to her. p. 643

*Decided December 10th, 1926.*

Appeal from the Baltimore City Court (Solter, J.).

Action by Gustave B. Webb against Isidor Panitz. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Charles F. Harley* and *Michael James Manley,* for the appellant.

*Clifton S. Brown,* with whom was *J. Lawrence Sellman* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

This is a suit for personal injuries growing out of an automobile accident, and is here for the second time on appeal. The former appeal was heard and decided during the October Term, 1925, and the decision is reported in 149 Md. 75. On the second trial the plaintiff again obtained a verdict and this appeal is from the judgment on that verdict.

The accident occurred at about six o'clock on the evening of November 16th, 1923, at the northeast corner of North Avenue and Linden Avenue, Baltimore. Mrs. Gustave B. Webb, plaintiff, testified that she got off a westbound North Avenue car at Linden Avenue and walked to the north side of North Avenue, and waited at the corner on the east side of Linden Avenue until a traffic officer stationed at the intersection of those avenues gave the signal to cross Linden Avenue; that she then glanced to the left "and I saw no cars and I didn't hear any horn" and "I then started to cross * * *. I had taken two or three strides when I heard some one shout, 'look out there'; simultaneously I got an awful blow in the back towards my left side." "Q. How far were you thrown, do you recollect? A. Well, at the time I said I thought it was twelve or fifteen feet." She further testified that she was struck by the front of defendant's car.

A nurse testified that there was an indentation large enough to put her fist in right at the base of the spine a little

towards the left. The doctor who was called in after the accident said he found a dent in the back part of her left hip where the large muscles are, where the muscles had been broken apart, and that the dent could not have been caused by a body coming in contact with a flat surface, and that it would require some pointed part to cause the dent; that in his opinion the injury was a permanent one.

Isidor Panitz, defendant, testified that he and his brother were riding in his car on North Avenue, having entered said avenue from Mt. Royal Avenue; that his chauffeur, named Jerome, was driving; "When we got to Linden Avenue the traffic officer was on the corner and the semaphore read, 'stop,' and we stopped the car. We stood there for a while, when the officer turned the sign to go, and he motioned with his hand. We started all over again in first gear, turning the corner very slow into Linden Avenue. We passed the corner and when we got just a little above that corner—I sat to the right of the car and my brother was sitting next to me—I saw a lady on the sidewalk near to the curb standing still, and suddenly she began in a hurried way to run across the street. The front of the car had passed the lady; she was almost on top of me sitting in the rear of the car. She was so close that I was almost tempted to shove her back from running into us, but I was afraid I would hurt the lady by shoving her back. Instead I hollered to the chauffeur, 'Jerome, quick, stop the car,' and he did instantly. * * *."

The witness further testified that when he stopped, plaintiff was back of the car; that the car stopped within three feet; that the car was going about as fast as a man would walk—very slow, about three or four miles an hour; that the chauffeur blew his horn when he turned; that the chauffeur stopped to wait for the signal at the regular place for cars to stop going west, back of the white lines there.

The testimony of the brother and the chauffeur was substantially the same as that of defendant. All said the car was going at about three or four miles and that the horn was blown. The chauffeur said he blew it "at the beginning of

the turn before he came across the crossing and before he act-
ually got into Linden Avenue"; that he did not start to make
the turn until the sign to go was given.

At the close of the testimony plaintiff offered the usual
damage prayer, which was granted, and the defendant six
prayers, four of which were granted; the fifth and sixth
asked for directed verdicts, one on the ground of contributory
negligence and the other the general demurrer prayer, both
of which were refused. The only bill of exception is to the
ruling on the prayers. It is not contended, however, that
there was error in granting plaintiff's prayer if there was
any case to go to the jury.

The facts of this case are strikingly like those of *Hempel
v. Hall,* 136 Md. 178. According to plaintiff's testimony
she started to cross Linden Avenue as soon as the signal to
go was given and at that time defendant's car had not entered
said avenue. Defendant's testimony also was that his car
did not start until the signal was given. We said in *Hempel
v. Hall, supra,* that plaintiff in that case had the right to
assume that the car would not turn into the street which
plaintiff was about to cross, if it were true, as she swore,
that no horn was blown, and therefore she was not guilty of
contributory negligence in failing to look up and down the
intersecting street as well as that which she was on. And
on the previous appeal of the present case we said: "If while
the automobile was far enough away to permit the driver
thereof by the exercise of reasonable care and caution to
have discovered her intention, and to have avoided striking
her, the plaintiff had actually accepted the invitation to
cross the street and was crossing it, she had the right to
continue her course without interruption, and to assume
that the driver of the automobile would respect her right to
proceed."

In considering the rejected prayers we must, of course,
assume plaintiff's testimony to be true, and with that as-
sumption she was not guilty of contributory negligence,
because she had started to cross the street when defendant's
car was far enough away to permit the driver to discover her

intention to cross in time to avoid striking her; and also because, according to her testimony, no signal was given by the driver of his intention to turn into the avenue. This disposes of the fifth prayer.

As to the sixth prayer, we said in *Hempel v. Hall, supra,* that on the issue of the negligence of the defendant, if he failed to give warning, that was enough to send the case to the jury. In that case, as in this, the driver was changing his direction to intersect the line of pedestrian traffic. Plaintiff said she "didn't hear any horn."

In *United Rys. & Elec. Co. v. Crain,* 123 Md. 332, this Court said through Judge Pattison: "If it be shown that the witness could have observed the signal, had it been given, and that his attention was attracted thereto because of a duty imposed on him in connection therewith, or because of the known position of danger in which he was at the time placed, naturally suggesting that he, for his own safety and protection, should look and listen for the warning or signal of danger; or if it be shown from the facts and circumstances of the case that for any cause or reason his attention was attracted thereto, and that he at such time was listening for the ringing of the bell or the sounding of the whistle, the fact that he did not hear the signal is evidence sufficient to go to the jury tending to show that such warning or signal was not given." But apart from this, if plaintiff started to cross the street when the signal was given to go, as she testified, and defendant started his car when the same signal was given, as he testified, then it was certainly a question for the jury whether the driver was not negligent in failing to see her in time to avoid the accident. *Panitz v. Webb, supra.*

*Judgment affirmed, with costs to appellee.*