[No. 23205. Department Two. July 16, 1931.]

JOHN E. WOODS, *Respondent*, v. HYMAN GREENBLATT et al., *Appellants*.[1]

[1]Reported in 1 P. (2d) 880.

434

*Roberts, Skeel & Holman* and *Frank Hunter,* for appellants.

*George F. Hannan,* for respondent.

MILLARD, J.—While operated by the wife, an automobile owned by Hyman Greenblatt and Mollie Greenblatt, a marital community, struck John E. Woods, who instituted this action to recover for the resultant personal injuries. The trial of the cause to a jury resulted in verdict for seven thousand dollars, which was reduced by the trial court to five thousand dollars, in favor of the plaintiff. From the judgment entered on the reduced verdict, the defendants appealed.

Appellants first contend that the contributory negligence of the respondent was the proximate cause of his injuries; and that the trial court erred in not holding, as a matter of law, that it barred respondent's right to a recovery.

Unless only one reasonable conclusion can be reached from a given state of facts, a court will not·

determine the question of contributory negligence. That question is, ordinarily, one for the jury. *Lawe v. Seattle, ante* p. 362.

That the court did not err in submitting the question of contributory negligence to the jury, is patent from an examination of the facts, which are summarized as follows:

The accident occurred near the southeast corner of the intersection of Third avenue and Union street, in the city of Seattle, about eleven forty-five o'clock the morning of April 10, 1930. The traffic at this intersection was controlled by an automatic electric signal device, which was suspended over the center of the intersecting territory. The signal alternately turned red and green, stopping and starting the traffic at the intersection. The traffic engineer of the city testified that the signal was timed as follows:

"There would be a flow of traffic for twenty-two and one-half seconds in this direction. The signal then would change to red all around and remain red all around for five seconds, when it would appear green north and south and red east and west, and remain in that position for twenty-two and one-half seconds. A bell rings one second at the beginning of the change, and one second at the end of the change."

That is, traffic proceeds freely for twenty-two and one-half seconds in the direction in which the green light is showing. When the signal is to be changed to permit cross-traffic to proceed for a like period of twenty-two and one-half seconds, a warning is given by the ringing of a bell for one second. For five seconds from the time that the bell first rings, the stop signal of red is shown in all four directions. The five seconds is to afford sufficient time for those within the intersection to proceed through the intersecting territory which they entered under permission of the green

light. During this five-second interval, when the red light is showing in all four directions, such traffic as enters the forbidden territory does so at its peril.

The course of Third avenue is north and south. This avenue, measured from the north property line on Union street to the south property line on Union street, is seventy-five feet wide. Measured from curb to curb, the distance is fifty-four feet. Union street runs in an easterly and westerly direction. The width of Union street from the west property line on Third avenue to the east property line on Third avenue is seventy-one feet. The width from curb to curb is forty-six feet.

Respondent, who was about seventy-two years old and blind in his left eye (the automobile came from his left side), testified that he was proceeding northward on the east side of Third avenue; that he arrived at the southeast corner of the intersection of Third avenue and Union street "just as the light had went out." He stood on the corner and waited for the signal to change from red to green, "and when it changed to green I proceeded." He took three or four steps, then was struck by appellants' automobile, which he never saw at any time. The respondent was eight or ten feet north of the south curb of Union street when he was struck.

One of respondent's witnesses testified that she was standing at the same corner where the respondent was standing; that she, too, awaited the showing of the green light; and when the green light was displayed, she started across Union street almost alongside the respondent; that an automobile suddenly appeared from the left and struck the respondent, who was rendered unconscious by the blow. There is other testimony corroborative of the testimony of the respondent

that he did not start across the street until the green
light appeared, authorizing northbound and south-
bound traffic to proceed across Union street at this
point.

Mrs. Greenblatt was traveling eastward on Union
street. Her automobile was proceeding at a speed of
from ten to fifteen miles an hour. She testified that
she entered the intersection of Third avenue and Union
street with the green light in her favor; that a traffic
officer signaled her to cross the intersection. Two
traffic officers stationed in the vicinity testified that no
traffic officer was on duty at the intersection in question
during the time the accident occurred. Appellant wife
further testified that, when she had traveled one-third
of the distance across the intersection, a bell rang in-
dicating an approaching change of lights; that, at that
moment, the respondent stepped out into the street
from the southeast corner of the intersection; that she
pursued her course and, as the auto reached the pe-
destrian lane, the respondent walked into the side of
the right front fender of the automobile. Mrs. Green-
blatt's son was in the rear seat and her sister was in
the front seat of the automobile. The son's testimony
was corroborative of his mother's testimony. Mrs.
Greenblatt's sister was not present at the trial.

Appellant wife's testimony is to the effect that she
entered the intersection with the green light in her
favor, and that she traveled one-third of the distance
across the intersection before the bell rang warning
that the signal light was changing. At that instant,
she saw the respondent step from the sidewalk on the
southeast corner of the intersection.

It will be remembered that the total distance she had
to travel to cross Third avenue, measured from the
west property line on Third avenue to the east prop-

erty line of that avenue, was seventy-one feet; there-fore, she had a remaining distance of forty-seven and two-thirds feet to travel. If the speed of her auto-mobile was ten miles an hour, or fifteen feet a second, she would have passed the southeast corner within less than four seconds. If her speed was fifteen miles an hour, or twenty-two feet a second, less than two and one-half seconds would have been required to negoti-ate the distance. Respondent was eight or ten feet out into the street when he was struck. If he was walking three miles an hour, he would have proceeded at the rate of four and one-half feet a second. That is, if Mrs. Greenblatt was driving ten miles an hour, during the time she was traversing the remaining forty-seven and two-thirds feet, the respondent would have been seventeen feet or more north of the south curb of Union street. Traveling at fifteen feet a second, or ten miles an hour, Mrs. Greenblatt would have covered a distance of seventy-five feet during the five-second period the lights were red. If the speed of her car was fifteen miles an hour, she would have covered one hundred and ten feet during the five-second interval when red shows in all directions.

That the jury were convinced that the green light changed before Mrs. Greenblatt entered the intersec-tion, is reflected by their verdict. Accepting appellant wife's testimony as true that she was proceeding at a speed of ten or fifteen miles an hour, she would have had ample time (five seconds) to have gone through the intersecting territory even if she entered the in-tersection coincident in time with the ringing of the bell warning of the changing of the lights. However, if she entered the intersection subsequent to the sound-ing of the warning bell, she would not have had time to cross the street prior to the showing of the green

light in favor of the cross traffic. If she did that, she was guilty of negligence. If respondent waited for the green light to show in his favor before he entered the intersection, and there is ample testimony to that effect, he was not guilty of negligence. That the jury so believed is indicated by their verdict.

The contention of the appellants that respondent, who is blind in his left eye, did not exercise the degree of care demanded of him under the circumstances, in that he did not look to the left and see the approaching automobile, is without merit. Whether he exercised the care that an ordinarily careful and prudent man, so handicapped, would exercise under the same conditions, was a question for the jury; and they were so instructed.

Respondent had a right to assume that the automobilist would obey the law and not attempt to cross a street intersection against a traffic signal contrary to ordinance and statute. There was no duty imposed upon him of doing other than proceeding across the street when the green light showed in his favor, presuming that the eastbound and westbound traffic would not attempt to interfere with his progress.

"Appellants also contend that respondent Church showed that he was not exercising any care, when he admitted that he did not see the Shaffer car until it struck him. Respondent had the right to presume that the driver of appellants' car would obey the law, and would not attempt to cross a street intersection against a traffic signal contrary to law and ordinance. It was not incumbent upon him to do other than proceed across the street, presuming that traffic from that side would not attempt to interfere with his progress." *Church v. Shaffer,* 162 Wash. 126, 297 Pac. 1097.

Questions of fact—negligence of appellant wife and contributory negligence of respondent—were submitted to the jury under proper instructions and were

resolved against appellants. That finding can not be disturbed on appeal. *Skates v. Conniff*, 153 Wash. 538, 280 Pac. 15.

■ Appellants next contend that the trial court erred in denying their application for a continuance on account of the absence of a material witness, Mrs. Greenblatt's sister, who was in the automobile at the time of the accident.

On July 23, 1930, the complaint in this action was filed. On August 27, 1930, the cause was noted for trial. At that time, appellants were not represented by their present counsel, who appeared for the first time in the cause September 23, 1930, when they served appellants' answer on respondent. The cause was noted to be heard January 21, 1931. On January 7, 1931, motion, supported by affidavit of one of appellants' present counsel, was made to vacate the setting. The affidavit is to the effect that the affiant received notice December 29, 1930, that the cause was noted for trial on January 21, 1931; that, upon receipt of the notice, the attorney endeavored to locate the witnesses to the accident; that he then learned that Mrs. Greenblatt's sister was a material witness; that the witness was in Juneau, Alaska, and was expected to return to Seattle the latter part of March, 1931; that on December 29, 1930, the affiant addressed a letter to the absent witness inquiring whether and when she would return to Seattle; that the addressee was requested, if she did not expect to return in March, 1931, to inform the affiant of the name and address of a notary in Juneau before whom her deposition might be taken; that sufficient time had not elapsed for reply to the inquiry; that affiant "is not in a position to set forth exactly what said absent witness knows or would testify to." That motion was denied.

On January 16, 1931, appellants applied for a con-

tinuance to any date subsequent to March 30, 1931. That application was supported by the affidavit of another of appellants' present counsel. The gist of the affidavit is that the absent witness, Mrs. Greenblatt's sister, would testify substantially as appellant wife and her son later testified at the trial. No other affidavit was filed in support of the application, which was denied.

Counsel for respondent admitted that the witness would, if present, testify as stated by counsel for appellants, and consented that such testimony be considered as actually given upon the trial.

The refusal to grant a continuance was in accord with the mandate of the statute:

"A motion to continue a trial on the ground of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it, and also the name and residence of the witness or witnesses. The court may also require the moving party to state, upon affidavit, the evidence which he expects to obtain; and if the adverse party admit that such evidence would be given, and that it be considered as actually given on the trial, or offered and overruled as improper, the trial shall not be continued. The court, upon its allowance of the motion, may impose terms or conditions upon the moving party." Rem. Comp. Stat., § 322.

The affidavit affirmatively shows that the evidence was merely cumulative. There was no showing of any probability of the attendance of the witness if a continuance were granted. The witness was not within the jurisdiction of the court. If she decided not to return to Seattle from Alaska, and agreed to and later did make a deposition, the deposition would not have been of greater value than the admission of respondent that she would, if present, testify to the same facts.

Nor can it be held that counsel was diligent. Present counsel had from September, 1930, when they filed the answer to the complaint, to ascertain whether the witness would be available and, if not, to obtain her deposition.

*Johnson v. Dahlquist*, 124 Wash. 267, 214 Pac. 157, cited by appellants, is not in point. In that case, the respondent opposed the continuance, and denied that the witness would testify as sworn to by the appellant. In the case at bar, the respondent complied with the requirement of the statute by admitting that the absent witness would have testified as appellants' counsel stated.

Appellants next assign error upon the denial of their motion for a new trial.

One of the grounds upon which appellants based their motion for a new trial was the alleged abuse of discretion of the trial court in refusing a continuance. If it is not an abuse of discretion to refuse a continuance on account of the absence of a witness, it is not an abuse of discretion to refuse a new trial requested on the same ground.

Neither did the court err, as appellants insist, in refusing to grant a new trial because of the excessiveness of the verdict. The jury returned a verdict of seven thousand dollars, which the trial court reduced to five thousand dollars. We do not find that the verdict was the result of bias, passion or prejudice. The jury were properly instructed as to the awarding of damages to compensate the respondent for the injuries he sustained. The respondent testified as to his age and to the injuries of which he complained. The respondent was confined to the hospital for six weeks. The injury to one of his knees was such that the respondent will always have to use a cane to aid him in

walking. The medical testimony is to the effect that the injury to the knee is permanent and that one of his shoulders, which was fractured, will be permanently disabled. The trial court was doubtless convinced, as are we, that the verdict as reduced was not excessive.

"The court will not set aside the verdict merely because it may differ in opinion from the jury as to the proper award to be made. In actions of tort for personal injuries, there is no certain or definite rule by which the amount of the award can be measured. It is a matter peculiarly within the province of the jury to determine, and parties have the right to the judgment of the jury, not the court, upon the matter. Before the court may interfere, therefore, it must be found that the verdict is so far inadequate, or so grossly excessive, as to be without support in the evidence, or it must appear that the verdict was the result of some extrinsic consideration, such as bias, passion, prejudice, or the like. In the case before us, we find nothing of this sort. It is possible that the verdict is larger in amount than the court would have found were it the trier of the fact, but there is nothing to indicate that the verdict was not the dispassionate consideration of the evidence by the jury as they viewed the evidence." *Dorian v. Boone,* 152 Wash. 681, 279 Pac. 107.

The judgment is affirmed.

TOLMAN, C. J., BEELER, and BEALS, JJ., concur.