[No. 26169. *En Banc.* March 25, 1937.]

MARGARET GABLE, *Appellant,* v. C. H. FIELD *et al.,*
*Respondents.* [1]

*Allen & Wilkins (Edgar R. Rombauer,* of counsel),
for appellant.

*N. A. Pearson* and *F. M. Reischling,* for respondents.

[1]Reported in 66 P. (2d) 356.

HOLCOMB, J.—This action was brought by appellant against respondents to recover damages sustained as the result of being struck by their automobile about eight p. m., November 22, 1934, in the intersection of Olive way, Fifth avenue, and Westlake avenue, in Seattle.

The intersection is formed by five approaches from the streets mentioned. The intersection is unusual in its outlines and confusing as to its lanes of travel, pedestrian and vehicular. Fifth avenue runs through the intersection, entering it in a northerly direction from the south and leaving it in a very slightly north-westerly direction on that side of the intersection. The intersection is large and very heavily traveled. To lessen the danger of the travel across the intersection, pedestrian lanes from the northwest corner of the intersection were established, running from the westerly side of Fifth avenue, in a southeasterly direction, to the safety zone or island situated near the center of Fifth avenue as extended across the intersection, from which safety island pedestrian lanes were laid out in a northeasterly direction diagonally across the easterly side of Fifth avenue to a pointed curb formed by the westerly line of Westlake avenue and the easterly line of Fifth avenue.

The safety island was constructed of six-inch pipe, set in sockets in the pavement, the pipe being four feet high, with a wooden cap or top, and of sufficient strength to withstand the impact of an automobile. Blinker lights were maintained on or about the island structure. The situation was such that an automobile driven north on Fifth avenue across the intersection would be compelled to swing somewhat around the safety island to keep on the driver's right side of Fifth avenue.

Appellant, a pedestrian going over the intersection,

entered a safety island by way of the pedestrian lane from the west side of Fifth avenue, waited for the green light, then turned north to get out of the intersection, going by the pedestrian lane from that side of the safety island. About that time, respondent the husband, who was driving on Fifth avenue, drove through the intersection from the south, passed near and somewhat around the safety island. Thus it will be noticed that the driver approached the island from a direction to the rear and slightly to the right of appellant as she left the island, at which time both of them were going in about the same northerly direction.

Appellant testified that, after reaching the safety island, she waited until she heard the second traffic bell, and looked up and saw the light was green; that, as she stepped out of the island, she looked to the right and to the left, she said repeatedly, and there was no car in sight, and that she did not see the automobile until she was actually struck. There is no claim that she looked to the rear for traffic on the same street going in the same direction she intended to, and did, go. She further testified that, just as she stepped about one step out of the safety island, she was struck by the automobile.

In the complaint, it was charged that the collision was caused by the careless and negligent driving of respondent husband. This was denied, and it was affirmatively alleged that the collision was caused by her fault and negligence. The trial resulted in a verdict for respondents. A motion for a new trial was denied. This appeal is from a judgment of dismissal of the action.

The first assignment charges error in giving instruction No. 12, as follows:

"It is the duty of one stepping into the street to exercise reasonable care in looking to see if vehicular traffic is approaching in sufficient proximity to constitute danger, and you are instructed in this respect that under the particular conditions and circumstances existing at the intersection in question, *it was plaintiff's duty to exercise reasonable care in looking to see whether or not traffic was approaching from her right rear* before proceeding to cross from the island in said street intersection northward to the curb, and if you find that she did not exercise reasonable and ordinary care in this particular and that her failure to do so materially and proximately contributed to cause the collision between herself and the automobile of the defendants, then I charge you that she can not recover and your verdict must be for the defendants."

We have italicized the words, as counsel has, to indicate the attack made upon the instruction. The contention of appellant in this respect is that a pedestrian owes no duty to keep a lookout to the rear; that the law places that burden directly upon the motorist.

That part of the instruction is erroneous and prejudicial. It is never the duty of a pedestrian, who has obeyed the legal traffic signals and entered a lawful pedestrian cross walk in a street intersection, who has looked to the right and left, to also look to the rear. She had the right of way across. As to such well defined crossings, the burden is placed by statute and ordinances upon the motorist. In this case, appellant, the pedestrian, had certainly complied with the law and taken proper precautions for her own safety.

In *Hempel v. Hall,* 136 Md. 174, 110 Atl. 210, 9 A. L. R. 1245, it was held that one struck by an auto turning, without blowing the horn, from an avenue to a street, as she stepped from the sidewalk to cross the street, was not negligent, as a matter of law, because not looking along the avenue before stepping on the crossing. In other words, the contributory negligence

of such pedestrian was held to have been properly submitted to the jury.

In *Panitz v. Webb,* 151 Md. 639, 135 Atl. 406, which had been heard on a previous appeal and reported in 149 Md. 75, 130 Atl. 913, and reversed and remanded for a trial by a jury, on the second trial, plaintiff again obtained a verdict. In this case, plaintiff, a woman, had taken two or three strides after alighting from a street car and walking toward the north side of a certain avenue, she saw no cars and started across. When she had taken two or three strides, she heard someone shout "Look out," and simultaneously received an awful blow in the back towards the left side. She was thrown twelve to fifteen feet. In that case, the court of appeals of Maryland reaffirmed the *Hempel* case, *supra,* and, among other things, held that, if the driver of an automobile, when about to turn into a cross street, failed to give any signal, a pedestrian crossing that street is not guilty of contributory negligence because she fails to look up and down the street from which the car is turning; and if she started to cross the street when the automobile was far enough away to permit the driver to discover her intention to cross in time to avoid striking her, she was not guilty of contributory negligence, as a matter of law.

In *Courviosier v. Burger,* 61 Cal. App. 470, 215 Pac. 93, a woman testified that she was crossing a street in the place allotted to and ordinarily used by pedestrians; that, before leaving the sidewalk, she carefully looked up and down the street and saw no vehicle approaching. The court said:

"This is all that she was required to do before proceeding on her way. It could not be claimed with any reason that she should have looked up and down K street in anticipation that a vehicle might turn from that street into Eighth street. If that duty were imposed upon a pedestrian, it is easy to see that he might

be kept waiting during all the busy hours of the day. When she saw no one approaching she was entirely warranted in pursuing her journey, assuming that if anyone turned from K into Eighth before she crossed he would give her timely warning of his approach."

The reasoning applies to the instant case. It was approved, as well as the *Hempel* case, *supra*, in *Puorro v. Salerno,* 109 N. J. L. 381, 162 Atl. 527.

To the same effect are *Bruce v. Cohn,* 172 Minn. 386, 215 N. W. 520, and *Liberty Highway Co. v. Mastin,* 34 Ohio App. 183, 170 N. E. 604.

Cases cited and quoted by respondents where pedestrians were crossing streets diagonally, or between intersections, where the law imposes a much greater duty of care for their own safety, or who leave a safety island and walk across to the curb knowing that traffic would have the right to pass in front of them and where such traffic must have been seen, if any look whatever had been taken, are wholly inapt. Nor is the situation here like that in *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, *Steinheim v. Nicholas,* 171 Wash. 614, 18 P. (2d) 836, and other similar cases where pedestrians were struck by cars coming from one side or the other, which no one having their faculties could do other than see had they looked.

Appellant obeyed the traffic signals and was where she had a right to be. Modern cars are swift and silent, capable of gliding without warning from the "right rear" upon unsuspecting pedestrians. The burden is upon motorists to use greater care to avoid injury to pedestrians who have complied with the law and secured the lawful right of way. These were questions of fact for the jury under proper instructions, which were not given.

 Assignments of error Nos. 3 and 4 relate to the

refusal of the trial court to give two requested instructions, as follows:

"If you believe from the evidence that from the safety island or zone across to the opposite curb there was a cross walk marked or unmarked for pedestrians, and that the plaintiff, being in the safety island or zone, and desiring to go across the street to the opposite curb, started in and along such sidewalk, then I charge you that as a matter of law she had the right-of-way and the right to assume that no vehicle would run upon or against her and to proceed accordingly and that she could continue so assuming until she reached the opposite curb."

"A pedestrian at an intersection where traffic is controlled by automatic signals has the right to start across the street upon the crosswalk provided for pedestrians, whether the same be marked or unmarked on the street, with the 'Go' or green light and to assume that drivers of vehicles will likewise observe the light and obey the law and will yield to them the right of way until they have reached the opposite curb."

Those instructions are correct under our decisions in *Johnson v. Johnson*, 85 Wash. 18, 147 Pac. 649; *Riddel v. Lyon*, 124 Wash. 146, 213 Pac. 487, 37 A. L. R. 486; *Jurisch v. Puget Transportation Co.*, 144 Wash. 409, 258 Pac. 39; and *Woods v. Greenblatt*, 163 Wash. 433, 1 P. (2d) 880.

The instructions should have been given, and failure to give them was error.

The judgment is reversed, and the case remanded for a new trial.

MAIN, MILLARD, BLAKE, and GERAGHTY, JJ., concur.

BEALS, J. (dissenting)—As stated by the majority, appellant testified that, after landing on the safety island, she waited until she heard the second traffic bell announcing a change of signal. She then looked at the traffic light, and, observing that it showed green,

proceeded on her way north across the intersection. The majority state that it is not claimed that she looked to the rear for traffic on the same street. In my opinion, this latter statement is at variance with appellant's testimony. The traffic signal was almost directly southeast of appellant's position on the island. In order to see the signal, she was required to look in a direction opposite to that in which she was going. She therefore necessarily looked towards the right rear, from which direction respondent's car was approaching. More than this, appellant testified:

"I looked to my right and to my left and by looking at the signal, which you can see is back, that caused me to look back towards the Medical building."

The building referred to stands on the southeasterly corner of the intersection, exactly in the direction towards which, in my opinion, appellant was required to look for approaching traffic. Later, in response to a question as to whether or not appellant looked to see if there were any cars coming along Fifth avenue, appellant replied:

"A. From over towards the Medical Dental building, yes. I cannot say that I picked that building out. I had to when I looked to see that signal. You have to. You cannot help it. When you turn around to look at that signal it is bound to take your glance around that way. You cannot just look this way and see the signal (indicating). Q. I will ask you again, did you look down Fifth avenue to see if any cars were coming? A. I will have to say that I looked to Fifth avenue. Fifth avenue is way down here (indicating), and hits the Medical Dental building. I looked over here to where I would have to look to see if there were any cars coming, and here is Fifth avenue (indicating)."

Again, in response to a question as to whether or not appellant knew that cars would be traveling north on Fifth avenue, she testified:

"A. Why, I knew that they would be coming around with the signal there, yes. That is the reason why I turned around and looked back—looked to see if there were any coming. Q. Then you knew that cars would be traveling north on Westlake and some of them would turn and go out northerly on Fifth avenue. You knew that, didn't you? A. Why, I didn't stop to think that, but naturally a person knows that they would. I didn't stop to think anything about it, but they would naturally know that they would."

Fifth and Westlake avenues merge some distance south of the intersection and of the south line of Olive way, and appellant in her testimony referred to this fact and refused to say that she had looked down Fifth avenue, which she described as adjacent to Frederick & Nelson's store and the triangle building which occupies the space between Fifth and Westlake. Appellant could not have been expected to look so far away as this for approaching traffic—cars so far away would not concern her, as by far the greater portion of such traffic would proceed north on Westlake, or east or west on Olive way, and so constitute no menace at all to one in appellant's situation; but, in my opinion, she was required to look to her right rear and note any traffic approaching in her direction *through the intersection*. This she repeatedly testified that she did, and for this reason it should be held that the instruction of which appellant complains, and which the majority hold erroneous, was, if erroneous, error without prejudice.

In my opinion, however, the instruction was correct. The intersection is very large, and constitutes a most difficult and unusual traffic problem. From her island, appellant was controlled by a traffic signal almost exactly back of her as she faced the direction in which she desired to proceed. She therefore had to turn around to observe the signal. An abnormal situation

must often be met in a somewhat abnormal manner, and I am convinced that a pedestrian in appellant's situation, exercising reasonable caution for his own safety, and being advised as to the surrounding conditions by necessary observation and the position of the traffic signal, should be required, in the exercise of due care, to look to his right rear towards the Medical Dental building, as appellant repeatedly said she did, for the purpose of observing approaching vehicular traffic.

If appellant looked in a southeasterly direction, as she testified she did, she either saw respondent's automobile and carelessly disregarded its approach, or she did not see what was in plain sight and is herself responsible for her careless observation. If she did not look in this direction, she failed to take reasonable precautions for her own safety.

In the recent case of *Hamblet v. Soderburg, ante* p. 449, 65 P. (2d) 1267, is found this very pertinent paragraph:

"Present day traffic upon our streets and highways is of such a nature that the duty of reasonable care, which rests upon all, requires, in almost any conceivable situation, a fairly efficient attempt at observation before a pedestrian steps into the path of vehicular traffic."

To be efficient, observation must be directed in the direction from which vehicular traffic may menace the safety of the pedestrian. In the case at bar, practically the only direction from which traffic could come which would endanger appellant's safety, was from her right rear. While it is conceivable that a car might come south along the west side of Westlake avenue and turn on to Fifth avenue, as a practical proposition this would never happen, as a car desiring to proceed in any such direction would turn from Westlake west on

Stewart street, just north of the plot occupied by the McGraw statue. The obligation, then, rested upon her to look towards the Medical Dental building, which stood to the rear and to the right of where she was standing, to observe whether or not traffic was approaching from that direction.

The cases cited by appellant, relied upon by the majority, are not in point. The accident which gave rise to the case of *Hempel v. Hall,* 136 Md. 174, 110 Atl. 210, 9 A. L. R. 1245, took place in a right angle intersection, and is not here controlling. The facts in the case of *Panitz v. Webb,* 151 Md. 639, 135 Atl. 406, as stated in the majority opinion, clearly distinguished that case from the one at bar. I find no case which seems to me in point upon the very peculiar facts here presented.

The court properly instructed the jury upon this point, and, in my opinion, the verdict returned in respondent's favor was right, both in fact and law, and the judgment should be affirmed.

STEINERT, C. J., TOLMAN, and ROBINSON, JJ., concur with BEALS, J.