CARYL, USE OF MERCHANTS MUTUAL CASUALTY CO. *v.*
BALTIMORE TRANSIT CO.

[No. 106, October Term, 1947.]

**164**

*Decided March 18, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Nathan Patz* for the appellant.

*Philip S. Ball* and *James J. Lindsay* for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The accident, which is the basis for the suit for personal injuries here on appeal, happened on October 22, 1945, a few minutes before 7:00 o'clock in the evening. The locale was the intersection of Charles Street and North Avenue in the City of Baltimore. Traffic there was then controlled by lights on a tower in the approximate center of the intersection. The appellant (plaintiff) was walking east on the south side of North Avenue in the appropriate lane for pedestrian travel crossing Charles Street. The trolley car of the appellee was making a left hand turn from the east side of the intersection into Charles Street. It had come from the east on North Avenue and was going south on Charles Street.

The intersection was fully lighted and visibility was good, although it was after dark.

Appellant, according to his testimony, started to cross Charles Street when the traffic light turned green, but halted when an automobile facing east on North Avenue made a right hand turn to go south on Charles Street. He stepped back to the curb until this automobile had passed in front of him, and, then, again started across the street. He had looked towards the center of the intersection to see if there were cars or automobiles coming before he stepped off the curb. After the one automobile passed in front of him, he looked again to see that the light had not changed. An automobile facing north on Charles Street was waiting for the signal to proceed, and as he had to pass in front of this automobile, he kept his eyes on it as he walked across the street at a normal gait. When he had reached a point about midway between the east and west curbs of Charles Street he was struck on his left side by the trolley car. The tracks on which the car was running had, at that point, straightened out from the curb and were pointing directly south down Charles Street. The left side of the street car, just back of the front, came in contact with the appellant. The motorman was not aware of the accident, and continued down Charles Street without stopping. The appellant was thrown and badly injured.

It appears, therefore, that the appellant before he was struck, had crossed the track on which the car was running or at least had reached the inside rail. He did not see the car until almost at the moment of impact. He did not hear any bell sounded by the car. He said "if you were looking for the street car you would see it, but with the heavy traffic and looking at the islands, I was more concerned about automobiles on the other side, and whether I was going to get across on the other side before that car started up."

At the conclusion of the plaintiff's case the trial court refused the defendant's prayer that there was no evi-

dence of its negligence, but granted a contributory negligence prayer and directed a verdict for the defendant. From the judgment on this verdict, the plaintiff appeals.

As we have in the record only the evidence offered on behalf of the plaintiff, we have not a complete picture of the situation. There is nothing to show just when the trolley car started, whether at the instant the light changed to green or later. There is evidence that it was gathering speed as it came around the curve. From the testimony we have, however, it is clear that the appellant did not see the car, that he walked across the street in front of it, that he had almost cleared it when he was struck, that the motorman of the car did not see appellant, and that no attempt was made to stop the car or to retard its speed so as to avoid the accident.

The question before us, on this record, is whether the plaintiff was so clearly guilty of contributory negligence as to require the court to so hold as a matter of law. The general rules on this subject have been frequently stated, and need not be emphasized again, except to say that unless there is evidence about which reasonable minds may differ, the decision should be made by the court and not the jury. See *Baltimore Transit Co. v. Young*, 189 Md. 428, 56 A. 2d 140. Here, however, the answer to the question turns on the right of appellant, under the traffic laws, to cross the street in the circumstances related. We must, therefore, consult the applicable statutes and decisions in order to reach a solution.

Prior to 1943, there was no statutory enactment specifically defining the reciprocal rights of pedestrians and vehicles at intersections where traffic was controlled by signals. Where there was no traffic control, pedestrians had the right of way at crossings and vehicles between crossings in all towns and cities (Flack's Annotated Code, Vol. 2, Art. 56, Sec. 235). That provision is still in the statute (1943 Supplement, Article 66½, Sec. 181). But this court had decided the question of the respective rights and responsibilities of pedestrians and vehicles at

traffic controlled intersections under the law prior to 1943. In the case of *Panitz v. Webb*, 1925, 149 Md. 75, 130 A. 913, 915, an officer, directing traffic, had given the "go" signal to westbound traffic. Plaintiff was walking west in response to this signal. Defendant's automobile was also going west, but turned north and there was a collision. The court commented on the statute giving pedestrians the right of way at intersections and the special exemption therefrom of such intersections where traffic was controlled, and said that this exemption left pedestrians and vehicles at controlled intersections to their common law relationship with respect to right of way where both had favorable traffic signals. "In exercising the right to proceed, each of them was bound to use that degree of care and caution to avoid inflicting or receiving injury which persons of ordinary care and prudence would have used under like circumstances. The degree of care required of each of them was the same, although the manner of its exercise differed because of the objects to which it was applicable."

Under this state of the law, we had before us a case involving an accident between a pedestrian and a street car, somewhat similar in its facts to the one before us. This is *Doble v. United Railways*, 1928, 155 Md. 343, 345, 142 A. 106, relied on by appellee. The accident in that case was at a crossing not controlled by traffic signals. But at that time street cars were not bound by rules of the road, and so the pedestrian had no right of way over them. The plaintiff walked in front of the street car which was turning towards her, and the court held she was guilty of contributory negligence as a matter of law. That case is clear authority in cases where neither party has the right of way, and where both are left to their common law reciprocal duties. The appellee contends that is the situation here, and that the Doble case is controlling.

The Legislature in 1943, by Chapter 1007 of that year, revised the Motor Vehicle laws. All statutes having to do with the general subject are now codified as Article

66½ of the Annotated Code (1943 Supplement). Section 141 has to do with traffic control signals and provides under subsection (a) when the signal is green alone or "Go", "(1) Vehicles facing the signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. All vehicles shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection at the time such signal is exhibited. (2) Pedestrians facing the signal may proceed across the roadway within any marked or unmarked crosswalk."

It is further provided by sub-section (e) that the operator of any street car or trackless trolley shall obey the above signals as applicable to vehicles. This is an exception, because trolley cars, either on rails or trackless, are not included in the general definition of vehicles set out in the statute, Art 66½, Sec. 2 (65).

The appellee admits that sub-section (e) makes section 141 applicable to street cars, but it strenuously contends that no right of way is given to pedestrians over either such cars or automobiles by sub-section (a) (1) and (2) above quoted. It construes these sub-sections to mean that vehicles (including street cars) have to yield the right of way to pedestrians who are lawfully within the intersection at the time the green light or the "go" signal is first exhibited. By this construction, only those pedestrians who had started across in front of the vehicle before the light changed would be affected. They would have the right to continue across, but other pedestrians who would have the signal in their favor when it changed would not be within the protection of the statute.

It has always been the law that a pedestrian or a vehicle starting across an intersection with a favorable signal has the right to complete the trip, even if the light changes in the middle of the passage. *United States Fidelity & Guaranty Co. v. Continental Baking Co.*, 172 Md. 24, at page 29, 190 A. 768. No new statute is re-

quired to preserve this right. The Legislature must have meant more than this.

What the Legislature said, moreover, was that vehicles with the right to proceed or turn left or right must yield the right of way to all other vehicles or pedestrians lawfully within the intersection at the time the signal is exhibited. The operation of the statute is not confined to giving a right of way to those already in the intersection when the signal is first shown. It applies to all "lawfully" within the intersection at the time the signal is exhibited, which means the entire time. A vehicle, making a left turn, therefore, must wait until those meeting it have passed, and must not cross in front of approaching traffic, either vehicular or pedestrian, in such a way as to interfere with its lawful progress.

The appellee urges upon us what it claims is a practical difficulty. It contends that the interpretation we have suggested would curtail the usefulness of street cars, and would lead to absurd results when two automobiles coming in opposite directions would have to give the right of way to each other, no matter which turned where. But, that has long been the law with respect to automobiles at intersections where there is no traffic control, and it does not seem to have caused much, if any, difficulty. There are many more such intersections than there are those which have signals or officers directing traffic. And street car operations are surely not intended to have precedence over the safety of pedestrians. In any event, if the statute appears to be unworkable or confusing in its application, that is a matter for the Legislature and not for us. We can only find what the Legislature meant by what it said.

Our conclusion is that by the provisions of Section 141 of Article 66½, the appellant had the right of way over the street car of the appellee. The effect of this legislation is to change the law laid down in *Panitz v. Webb, supra,* as to the reciprocal rights of pedestrians and vehicles (and now street cars) at traffic controlled

intersections. Now the pedestrian has a right of way over the street car at such intersections. The situation, therefore, is materially different from that considered in the Doble case, *supra*. In that case the pedestrian had no right of way over the street car and the court was careful to distinguish it from cases in which the pedestrian would have such a right of way. In a later case, *Watson v. Storrs*, 167 Md. 685, which is unreported, but the opinion in which can be found in 175 A. 263, 264, a pedestrian walked in front of a street car and the court held that the case was properly taken from the jury on the ground of contributory negligence, citing the Doble case and others decided since. In the course of discussing the basis of the ruling, the Court said, "It is important to remember that there is no right of way at a street crossing in favor of a pedestrian against a street car. Both are bound to exercise reasonable care."

Since the appellant in this case had the right of way, he was not obliged to anticipate that the street car would not respect that right of way. *Wintrobe v. Hart*, 178 Md. 289, at page 298, 13 A. 2d 365, and cases there cited. He did not actually see the street car, although when he started to cross the street he looked for traffic which might interfere with him, and did see the car which came from his left. After that car had passed, he testified he looked generally towards the light and the islands, but his attention was centered on a car across the street from him waiting for the light to turn. He certainly could not be legally required to look in three directions simultaneously, that is, for vehicles coming from his rear and making right hand turns, for vehicles coming from in front of him and making left hand turns, and for vehicles waiting to start as soon as the light would turn. While there was evidence from which a jury might find the plaintiff guilty of contributory negligence in not seeing the street car until just before the impact, he had a right to rely to some extent upon the protection afforded by the statute. Compare *Brown v. Bendix*, 187 Md. 613, 51 A. 2d 292, 294, 295, and cases

there cited. The testimony would permit the inference that even a momentary check in the movement of the street car, by an alert motorman, would have been sufficent to enable the plaintiff to clear the tracks. Where so much depends upon the timing and relative positions, we cannot say as a matter of law that the plaintiff was not justified in relying upon his statutory right-of-way to complete the crossing under the circumstances.

For the reasons above outlined, the judgment will be reversed and the appellant awarded a new trial.

*Judgment reversed with costs and case remanded for a new trial.*