The Liberty Highway Co. *v.* Mastin.

184

(Decided December 9, 1929.)

*Messrs. Marshall, Melhorn, Marlar & Martin,* for plaintiff in error.
*Messrs. Zabel & Moss,* for defendant in error.

LLOYD, J. On July 28, 1928, at about 10:30 a. m., the defendant in error, Gilbert Mastin, to whom we will refer as the plaintiff, who was then 92 years of age, and whose hearing and vision were somewhat impaired, was attempting to cross Cherry street in a northerly direction from the southeasterly corner of Cherry and Summit streets in Toledo. At this street intersection was an electric automatic traffic device; a red light being the signal to stop and a green light to proceed, warning of the change from one to the other being given by an intervening yellow light. Mr. Mastin and his daughter and son-in-law, with some 12 or 15 other pedestrians, were waiting at the street corner for the green light to be displayed. They were at the curb in front of the other pedestrians, and, when the green light appeared, Mastin stepped from the curb in advance of the others, and had proceeded from the curb into the street, where he was struck by the right front fender or bumper of a truck of the plaintiff in error, hereinafter referred to as the defendant, which was then turning from Summit into Cherry street, with the object of proceeding easterly on Cherry street. To the truck was attached a trailer. In turning the corner, the front of the truck, when it reached the crosswalk on Cherry street, was from five to eight feet from the curb, and the rear thereof about two feet therefrom.

There is nothing in the record disputing the testimony of witnesses called by plaintiff that Mastin,

his daughter, and his son-in-law looked both to the east and to the west along Cherry street before starting across it. Mr. Mastin himself was not called as a witness, but his daughter and son-in-law testified that not only did they, but that he also, looked both easterly and westerly along Cherry street, and that nothing was approaching from either direction. None of them looked southerly on Summit street, that is, behind them, to see if any vehicular traffic was waiting on Summit street to proceed northerly on that street or from Summit street easterly onto Cherry street. The traffic regulations permitted automobiles to turn easterly from Summit to Cherry streets, as well as allowing pedestrians to proceed northerly across Cherry street, when a green light was shown on the southerly side of the signal tower. There is no evidence in the record that the driver of the truck gave any warning before proceeding from Summit into Cherry street, and there is in the record positive evidence that he did not give any warning by horn or otherwise to the pedestrians waiting at the curb to cross Cherry street. The driver of the truck either arrived at the intersection just as the green light was displayed, and without stopping proceeded onto Cherry street, or, having stopped for the red light, proceeded immediately on his way when the green light was shown, and in our judgment the jury could not well have found otherwise than that he did so proceed either without stopping, or, after stopping, without much thought of or attention to the 12 or 15 pedestrians standing on the corner, whose right to cross was at least equal to his right to proceed on Cherry street. The driver having died prior to the trial, the record is silent as to

what would have been his version of the cause of the collision.

The trial in the court of common pleas resulted in a verdict and judgment for plaintiff in the sum of $1,000, and no complaint is made that the judgment is excessive or against the weight of the evidence. The only errors of which defendant complains are that the trial court erroneously gave to the jury before argument three written requests, numbered 1, 2, and 3, asked by the plaintiff, and refused to give three such requests, numbered 3, 4, and 5, asked by the defendant.

The first request of plaintiff was in the exact language of Section 6310-22, General Code, and it is claimed that this section was enacted solely for the safety of vehicles following a vehicle turning, stopping, or changing its course, and was therefore inapplicable to the facts in issue in the instant case. However this may be, we do not think the giving of this request, nor of plaintiff's request No. 2, which is in the exact language of Section 6310-23, General Code, constituted prejudicial error.

Plaintiff's request No. 3 was taken from the opinion of the court in the case of *Community Traction Co.* v. *Reno,* 30 Ohio App., 143, 164 N. E., 429, and was not, as a request to charge, strictly applicable to the facts in the instant case, because, as worded, it rather assumed that the driver of defendant's truck did not stop before proceeding from Summit to Cherry street, whereas, as hereinbefore indicated, the evidence is not clear as to whether the driver of the truck did or did not stop before turning the corner, but our opinion is that defendant was not prejudiced by the giving of this request.

It may be suggested that mere abstract propositions of law ought not to be given as requests to charge for the reason that instructions to the jury as to the law should be concretely applicable to the facts in issue, and that it may not necessarily be proper to give verbatim as an instruction to a jury what is said in the opinion of a reviewing court by way of reason or argument for the decision therein announced.

Defendant's request No. 3 related to the issue of contributory negligence on the part of the plaintiff, enumerating three alternatives, the facts stated in any one of which, if found by the jury to be true, would preclude the right to a verdict in favor of the plaintiff. A part of this request reads as follows:

"The court further instructs you as a matter of law that your verdict should be for the defendant, the Liberty Highway Company, and against the plaintiff, Mastin, if you find from the evidence in this case, either (1) that the plaintiff left the curb on the south side of Cherry street and walked from the curb to the point where he and defendant's truck collided without looking, either just before he left the curb or while walking in the street, for northbound traffic on Summit street turning to the right into Cherry street, and that such failure to so look proximately and directly contributed to plaintiff's injury, or (2) that when plaintiff left the curb on the south side of Cherry street and walked to the front where he and defendant's truck collided, he looked for northbound traffic on Summit street turning to the right into Cherry street, and failed to see the truck of the defendant, and that such failure to see

the truck of defendant proximately and directly contributed to plaintiff's injury.''

There is no evidence that plaintiff looked behind him for northbound traffic which might turn to the right on Cherry street, and the jury was warranted in finding that he was not required to do so. He was not required, as a matter of law, to look behind him to see what course an automobile or automobiles on Summit street headed north might take.

The refusal to give this requested instruction was, in our judgment, not error.

In the case of *Deputy* v. *Kimmell*, 73 W. Va., 595, 80 S. E., 919, 51 L. R. A. (N. S.), 989, Ann. Cas., 1916E, 656, note page 661, where the relative rights and obligations of drivers of motorcars and pedestrians using public streets and highways are considered, the court comments particularly upon the care which should be exercised by operators of motor vehicles because of their character and the unusual dangers incident to their use.

If one may digress, it may not be inopportune to suggest that much of the present litigation in our courts results from injuries or deaths caused by collisions in which motorcars play a part in one way or another, and this character of litigation represents but a part of the injuries to person and property thus occasioned, for which amicable settlements are effected by those at fault. The basic reason for many, if not all, of these collisions, is the seeming obsession that speed is essential above all things else. Traffic signals are ignored, speed increased in the endeavor to cross an intersection before the expected red light appears; stops made upon instead of in the rear of crosswalks; corners turned with-

out stopping, or timely warning, with apparent forgetfulness that the offenders today may be the victims tomorrow. Only when some one with whom we have been intimately associated, relative or friend, has been thus injured or killed, do we appreciate the full import of the selfish want of consideration for the rights of others that, in most instances, makes possible such happenings. This mania for speed has been thus aptly described by the author of "The Great American Band Wagon:"

"Inside his gate a farmer pulls his team up short and counts a string of seven cars before he sees a loophole in the traffic. The pace is steady, seldom changing, just a little better than the law allows, only rarely does the caravan slow down. The horns toot and heads are thrust out nervously to look ahead.

"Somewhere a slow mover is holding up the line. He creeps along, deaf, dumb, and blind; rebellion in his rear. More sirens blare; clutches shift; brakes bite. What is the matter up there anyway? Somebody must be looking at the scenery! Doesn't that fellow know that if the rest of us don't get to Jamestown at 2:30 we won't reach Creston until after three? And if we don't reach Creston until after three, well, then we won't reach Smithtown by 3:45. Not that there is anything special for us to do at Smithtown. One car slips by. Another car. A third, a fourth, a fifth, a sixth. The pace picks up again."

Such owners and drivers of motorcars as persist in acting upon the misconceived assumption that public roads and streets are constructed and maintained for their sole benefit must expect to pay for that belief, if not in the more severe penalties which

the law provides, at least in monetary· verdicts, which juries seldom fail to return for injuries or death inflicted thereby. The apparent injustice is that drivers of motorcars who are careful and not at fault are blamed by the general public for the iniquities of the careless.

Request of defendant No. 4 contains the following: "That is, if you should find the defendant guilty of some of the material acts of negligence charged in the petition, and also find the plaintiff *casually* shared with the defendant or participated with the defendant in producing the injuries complained of, the plaintiff can not recover."

Obviously this request was properly refused.

Defendant's request No. 5 relates to the value of nursing and other services performed for plaintiff by his daughter and son-in-law. During the trial the court, on the suggestion of counsel for defendant, stated that evidence in this regard was admissible only for the purpose of showing the physical condition of the plaintiff, and that a claim for expenses for care and nursing "cannot be made by relatives unless there is some contract or something of that sort." In his general charge the court affirmatively instructed the jury that, if the verdict was in favor of plaintiff, no sum could be included therein for services rendered by his daughter and her husband. This aspect of the case was thereby eliminated as an issue, and no error was committed by the refusal to give this requested instruction. If the decisions in *Klein* v. *Thompson,* 19 Ohio St., 569, and *Ohliger* v. *City of Toledo,* 20 C. C., 142, 10 C. D., 762, make erroneous the view thus taken by the trial

court, the error would be prejudicial to the plaintiff and not to the defendant.

Finding no error in the record prejudicial to defendant, the judgment is affirmed.

*Judgment affirmed.*

WILLIAMS and RICHARDS, JJ., concur.