KOLLING *v.* MARTIN ET UX.

[No. 16,381.   Filed May 6, 1941.]

*George Panea,* of Hammond, for appellant.

*Harry H. Stilley* and *Edmond J. Leeney,* both of Hammond, for appellees.

BEDWELL, J.—This is an action by appellant, upon two complaints, consolidated by order of the Newton Circuit Court, to recover the sum of two thousand two hundred sixty-seven dollars and ninety-eight cents ($2,267.98) and interest, on each complaint, for money had and received. Such sums are alleged to be the amounts of payment of purchase price, taxes and interest, made by appellant to the appellees on two (2) written contracts for the purchase of two (2) lots of ground in the city of Hammond, Indiana. The complaints allege full performance of contracts by appellant on

December 31, 1929, and the failure and refusal of appellees to deliver deeds, as provided in such contracts, when payments were fully made, and thereafter, and also a demand for the repayment of the purchase price, or delivery of deeds, on April 13, 1932, and at numerous other times, and a demand for the repayment of the purchase price on May 15, 1934, and the failure to repay the same.

The actions were begun on May 22, 1934. A demurrer was sustained by the Lake Superior Court to one of the complaints and from this action an appeal was taken to this court. This court, on April 17, 1937, in *Kolling* v. *Martin*, 103 Ind. App. 318, 7 N. E. (2d) 527, held the complaint sufficient to state a good cause of action and reversed the ruling of the Lake Superior Court.

After remanding of cause, demurrers were overruled to each complaint, causes were sent on change of venue to the Newton Circuit Court, and appellees filed an answer of general denial and an affirmative paragraph of answer to each complaint. Issues were closed by replies of general denial to affirmative paragraphs of answer. These affirmative paragraphs of answer alleged that appellees were ready and willing, at the maturity of the contract, to perform all the terms and conditions thereof; that appellant refused to accept deeds, at the maturity of the contracts, or on April 13, 1932, and that on June 4, 1934 appellees presented a deed, and release of mortgage, which was tendered to appellant, who refused to accept the same and who demanded return of purchase money. Affirmative paragraphs of answer further allege, that appellees were at all times ready and willing to perform all the terms and conditions of the contract and were, then, ready and willing to tender deed to the real estate.

After filing of pleadings, causes were consolidated in Newton Circuit Court and were submitted to trial by jury. Before commencement of trial, appellees tendered in such court a warranty deed, signed by Frank R. Martin Company, Inc. in which appellant, Frank J. Kolling, was named as grantee, and also a release of a mortgage on the real estate that was described in such deed. Appellant filed written objections to the tender of this deed in open court. The cause was submitted to a jury for trial which returned a verdict for appellees. Appellant filed a motion for a new trial, which was overruled by the trial court, and while four (4) alleged errors are assigned in this court, appellant is relying upon the overruling of his motion for a new trial for reversal.

For an understanding of the errors relied on by appellant for reversal, we summarize the following facts shown by the record:

On March 8, 1926, appellant entered into two (2) separate written contracts with appellees, for the purchase of two (2) lots of ground in Hammond, Indiana. One contract described the real estate to be purchased and sold as Lot 18, Block 6, *Calumet Center Addition* to Hammond, Indiana. The other contract described Lot 19, Block 6, *Calumet Center Addition* to Hammond, Indiana. Each of the contracts provided for the payment of a purchase price of one thousand seven hundred fifty dollars ($1,750), for each lot, in installments, and upon the payment in full of such purchase price the appellees agreed to convey to appellant, by a good and valid warranty deed and abstract of title, the lots heretofore described. The contracts further provided that time was of the essence of the contract; that title and right to the possession of the real estate remained in vendors until the making of the conveyances; that

default by vendee in agreements or payments should work a forfeiture of all of vendee's rights under contract, without notice, and that payments already made should be forfeited to vendors as liquidated damages; that the interest of vendee in the contract was not assignable without prior written consent of vendors.

On April 18, 1928, the appellees, Frank R. Martin and Ethel E. Martin, executed a mortgage to Northern States Life Insurance Company to secure a debt of forty thousand dollars ($40,000) evidenced by notes signed by Frank R. Martin, Ethel E. Martin, W. G. Paxton, Leo Wolf and J. C. Paxton. This mortgage covered a number of lots, in the city of Hammond, among which were Lots 18 and 19 in each of blocks Nos. 1, 2, 3 and 4 of Calumet Center Addition. It also covered Lots Nos. 18 and 19 in block 6 of Calumet Center *Second* Addition. The mortgage does not show any "Block 6" in Calumet Center Addition, but does show blocks 5, 6, 7 and 8 in "Calumet Center Second Addition."

On December 21, 1929, appellant had fully paid to appellees, all the payments that were due under the terms of each written contract, and the appellee, Frank R. Martin, endorsed each written contract as paid in full. At the time such payments were fully made, appellant inquired of appellee Frank R. Martin, when he could obtain his deeds for the real estate. There is some conflict in the testimony as to what occurred between appellant and the appellee Frank R. Martin at this time, and thereafter, until the filing of the suits; but, there exists substantial evidence in the record from which the jury could determine that appellant agreed with the appellee Frank R. Martin that such appellee could have all the time that was necessary to obtain release of mortgage against real estate, and that it would be satisfactory to appellant, if such appellee

would procure another purchaser for the real estate, in which event, appellant would accept, in settlement, less than the amount he had paid as purchase money.

It further appears from the evidence that there were negotiations between appellant and such appellee, in 1932, for the substitution of other lots for the lots that had been purchased; that financial conditions were bad during this period, and that there was no sale for real estate; that on different occasions such parties discussed the sale of such real estate, but that nothing was done of a definite nature until May 15, 1934, when appellant went to the office of appellee Frank R. Martin, and made a demand for deeds to the real estate contracted for; and that he came back in the afternoon of the same day, or on the following day, and then told appellee Frank R. Martin that he had changed his mind, and that he didn't want the deeds, but that he wanted his money back.

The evidence further showed that on May 15, 1934, appellee Frank R. Martin, when appellant demanded his deeds, had his secretary to take down necessary information, and that he negotiated with the Lincoln National Life Insurance Company to secure release of the mortgage against the lots, and that on June 4, 1934, he took a deed, signed by Frank R. Martin Company, Inc., by Frank R. Martin, Pres., and Ethel E. Martin, Sec., with corporate seal attached, and abstract of title and release of mortgage, and presented them to the attorney of record for appellant; that such attorney looked them over and handed them back, telling him that he would have to take the matter up with his client to ascertain whether he would accept title to the property, and that later such attorney informed Frank R. Martin, that his client was unwilling to accept the deed and was demanding his money back.

Record further shows that on April 16, 1931, Frank R. Martin and Ethel E. Martin, by warranty deed, conveyed to Frank R. Martin, Inc., an Indiana corporation of Lake County, Indiana, a number of lots, all of which were located in "Calumet Center Second Addition," to Hammond, and-among which were lots 18 and 19 in block 6, and that on April 4, 1933, a receiver of Northern States Life Insurance Company assigned the mortgage, heretofore described, to the Lincoln National Life Insurance Company.

The deed that was offered to attorney of appellant on June 4, 1934, and that was tendered into court before the beginning of the trial, described the real estate therein conveyed as "Lot Eighteen (18) and Lot Nineteen (19) in Block Six (6) as marked and laid down on the recorded plat of *Calumet Center Second Addition* to the City of Hammond, Lake County, Indiana." The partial release of mortgage, signed by Lincoln National Life Insurance Company, which was offered with such deed, was signed on May 25, 1934, and released, "Lots 18 and 19, Block 6, *Calumet Center Second Addition*, a re-subdivision of Riverdale Addition to the City of Hammond, Lake County, Indiana."

When the appellees, before the beginning of the trial, tendered into open court, the deed that was offered to appellant's attorney on June 4, 1934, the appellant filed written objections thereto. During the trial the same deed was offered into evidence and the same objections were made. They were, in substance, that the deed was signed by Frank R. Martin Company, a corporation, instead of appellees personally, and, that the deed showed on its face that it was signed on June 4, 1934, and after suit had been begun on May 22, 1934.

The real estate contracts provided that, ". . . vendors agree to convey to vendee by a good and valid war-

ranty deed and abstract of title. . . ." Generally speaking, the vendee in an executory contract for the sale of land, with warranties of title, is entitled to the deed of the vendor and cannot be compelled to accept that of a third party. 66 C. J. § 528, p. 856, and cases cited.

Under a contract calling for a deed with the usual covenants of warranty, a deed tendered by one who acquired the title from, or under a conveyance by, the vendor, is not sufficient. *Reynolds* v. *Smith* (1842), 6 Blackf. 200; *Gaar* v. *Lockridge* (1857), 9 Ind. 92.

In the case of *Reynolds* v. *Smith, supra,* under a contract obligating the vendor to convey by a good and sufficient deed in fee simple, free of all encumbrances, it was held that the tender of a deed with covenants by the vendor and his wife, and of a quitclaim deed from a third party and his wife, with covenants as to the latter persons, against any claiming under them, was not such a deed as the vendee was required to accept. After the making of the contract, the vendor had conveyed the premises by deed of general warranty to such third persons and they had also purchased the premises under an execution against the vendor. In the opinion, at page 202, the court says :

> "His agreement was to pay the money for which the suit was brought, in consideration of a deed, with full covenants, to be made by Patton. Such a title as he contracted for he had a right to demand, secured by the covenants of the vendor, and free from blemish. The terms of the contract would be essentially varied, if a third person, without consent, were substituted to do that which one of the contracting parties had bound himself to perform."

Other courts, in other jurisdictions, have followed the same line of reasoning. In the case of *Weiser* v.

*Ekre* (1937), 67 N. D. 185, 193, 271 N. W. 147, 151, where the vendor had conveyed by warranty deed to a third person and the warranty deed of such third person was tendered to the vendee, the court says:

> "Under the terms of the contract the defendant was entitled to conveyance of the premises by 'a good and sufficient deed of warranty' executed by the plaintiffs (the vendors who executed the contract), and conveyance by such deed by a third party did not constitute a substantial compliance with the contract."

But other courts, in other jurisdictions, have held, and we think with the better reasoning, that the tender of a deed from a third person will be sufficient, if such third person acquired title through the vendor, and by the acceptance of the tendered deed, the vendee will receive all that he contracted for. The tendered deed from the third person should give to the vendee the full benefit of all the covenants of the vendor, that the vendee would have received, if he had obtained a deed direct from the vendor. This is true because, when the vendee and the vendor entered into a contract, under the terms of which the vendor was to give him a warranty deed, the vendee would be entitled to the benefit of the covenants of his vendor and should not be required to accept, only, the covenants of some third person, for the warranty of one man may be acceptable, while that of another may be worthless. *Rauch* v. *Zander* (1926), 138 Wash. 610, 245 P. 17; *Noyes* v. *Brown* (1919), 142 Minn. 211, 171 N. W. 803.

But while it is true that a vendee may be entitled to receive a deed signed by his vendor, it is also true that the vendee may waive such requirement. Just as a purchaser may waive a tender by a vendor, so he may, by words or conduct, waive objections to the sufficiency of the tender. *McCleary* v. *Chip-*

*man* (1904), 32 Ind. App. 489, 504, 68 N. E. 320; 66 C. J. § 687, p. 973, and cases cited.

The term "tender," when applied to mutual and concurrent promises in a contract for the sale of real property, has not the same connotation as when used in an offer to pay an ordinary debt due in money.

The tender required of a vendor is the readiness, willingness, and ability to perform his obligations, with notice to that effect to the vendee. 66 C. J. § 683, p. 971.

In Williston on Contracts (1938), Vol. 6, § 1819, on p. 5156, the author says:

"It is also generally held that a refusal of tender upon one ground precludes subsequent objection to its validity on other grounds, and even that a general refusal by the creditor failing to specify any cause waives any objection which could be then obviated by the debtor, and this is sometimes so provided by statute."

The record does not show that the appellant made any objection to the deed in question upon the ground that the deed had been signed by a corporation, instead of the appellees, until November 10, 1938, when the deed was tendered into open court. When the deed was offered to the attorney of appellant, on June 4, 1934, appellant was refusing to accept the same because he wanted his money back. He made no objections whatever to the form or contents of the deed. Under such circumstances, the jury could have determined that the appellant had waived any objection to the deed because it was not executed by the appellees, and the court did not err in permitting the deed to be tendered into open court, or in permitting the deed to be read into evidence.

There is no validity to the objection that the tender was made after suit was begun. While at common law

a tender of money had to be made before suit was begun, if it was pleaded as such; the defendant could bring into court the amount that he admitted was due and have such amount stricken from the complaint. 26 R. C. L. § 13, p. 632.

The appellees were entitled to a reasonable time to have deed and abstract prepared and to procure a release of the mortgage. The appellant could not preclude their rights by instituting suit before such reasonable time had expired.

At the trial of the cause, appellant objected because the trial court permitted the appellee Frank R. Martin to answer the following questions:

Q. "What did you do? Why did you not deliver the deed for eighteen days after he demanded it?"

Q. "Do you remember when the abstract was returned to you from the abstract company? What day—date?"

Appellant objected to the first of these questions because it called for a conclusion and to the second because the matter was immaterial. The trial court did not err in permitting these questions to be answered. The first question called for a fact and the second called for matter that was material in determining the controversy.

Appellant also objected to the admission into evidence of the partial release of mortgage, dated May 25, 1934, that had been made by the Lincoln National Life Insurance Company. Since there was no error in admitting the deed into evidence, there would be no error in admitting this partial release of mortgage.

One of the grounds in appellant's motion for a new trial was alleged error of the trial court in refusing to

give to the jury each of the instructions numbered 8, 9, and 10, tendered by the appellant.

By instruction No. 8 the trial court was requested to instruct the jury as follows:

> "You are further instructed that, under the law of this state and case, if you find, from the greater weight of all the evidence, that the defendants have been guilty of such conduct as is attributed to them in the allegations of plaintiff's complaints, the plaintiff was at liberty to treat the land contracts in question as broken and abandoned by the defendants, and that the plaintiff was entitled and he had a right to sue defendants for the recovery of the money paid to them, in such event, your verdict should be for the plaintiff and against the defendants."

The trial court did not err in refusing this particular instruction. While it is true that this court, in its former opinion, used language that was incorporated in this instruction, it does not follow that an instruction incorporating such language is proper. *Liberty Highway Co.* v. *Mastin* (1929), 34 Ohio App. 183, 170 N. E. 604.

By the use of the phrase, "have been guilty of such conduct as is attributed to them in the allegations of plaintiff's complaints," the court would doubtless mislead the jury and create confusion in their minds. The court did give to the jury instruction No. 7, tendered by appellant, which covers the same matter, and which is expressed in language that would not tend to mislead the jury.

The trial court did not err in refusing to give appellant's tendered instruction No. 9. By this instruction, the trial court was requested to tell the jury that the plaintiff was entitled to recover his purchase money, if the defendants defaulted in carrying out the terms of the land contracts by failure to execute

deeds when they were due. The instruction eliminated from consideration by the jury, all those facts and circumstances that would legally excuse the defendants from delivering the deeds at the time that they were due.

There was no error in refusing appellant's tendered instruction No. 10. By this instruction the trial court was asked to tell the jury that the transfer by appellees of the real estate contracted for, after the payment of the purchase price, would permit the appellant to recover the purchase price. This act alone would not authorize the recovery by appellant of the purchase price. Appellees might transfer the legal title to the real estate to a corporation, and still remain ready, able and willing to carry out all the terms of their contract with appellant.

Appellant also objects to the giving by the court of instructions Nos. 2, 4, and 5 that were tendered by the appellees.

Instruction No. 2 was as follows:

"The jury are instructed that while the law permits the plaintiff to testify in this case on his behalf, nevertheless the jury have a right in weighing his evidence and determining how much credence is to be given to it to take into consideration that he is the plaintiff and is naturally interested in the result of the suit."

This instruction correctly stated the law. If appellant desired to do so, he could have tendered a like instruction applicable to the appellee Frank R. Martin. Appellant did tender, and the trial court did give, an instruction which informed the jury that, "In determining the credibility of the witnesses, or any of them, you may take into consideration their interest or lack of interest in the result of this suit; . . ."

Appellant's objection to appellees' tendered instruction No. 4 was that such instruction invaded the

province of the jury. This instruction used the following phrase:

"And if you further find that on May 15, 1934, that plaintiff demanded the execution and delivery of a deed to him for the lots described in the complaint, and that on June 4, 1934, defendants did execute and deliver such deed to the plaintiff, or his agent, and that such time between May 15th and June 4th was a reasonable time in which to execute and deliver the same, and that at the time of the tender of said deed the real estate was unincumbered, then your finding may be for the defendants."

Appellant contends that by the use of the date, "May 15, 1934," the court invaded the province of the jury and prevented the appellant from arguing that demand was made before May 15, 1934. We do not agree with appellant's contention concerning this instruction.

The court did give and read to the jury instruction No. 5, tendered by the appellees, which was as follows:

"The court instructs you, that before the commencement of the trial of this law suit the defendants brought into court a deed to the real estate in question, being the same deed that was tendered to the plaintiff on June 4, 1934. The court instructs you that that it is a valid tender."

The appellant contends that the giving of this instruction was an invasion of the province of the jury because there was a variance between the description of the real estate, as set forth in the land contracts, and the description of the real estate, as set forth in the deed that was tendered into open court; and that it was a question of fact for the jury to determine whether the deed was for the real estate that was described in the land contracts. Appellant, to sustain his claim of error in the giving of this particular instruction, and also to

sustain his contention that the verdict of the jury was not sustained by sufficient evidence, is emphasizing the difference between the description contained in the land contracts and the description in the deeds tendered.

It is true that a purchaser is entitled to a deed describing the land as described in the contract of sale. It is also true that a purchaser and his vendor may make a mutual mistake in describing the land in the contract and that the description contained in the deed may be the proper one. There are many things in the record that would tend to show that the latter is true. The appellees, in their affirmative paragraphs of answer, describe the real estate about which the parties contracted as the same is described in the deed. · The appellee Frank R. Martin, when testifying, describes the property about which the parties were dealing as the same is described in the deed. At no time, prior to, or during the trial, did the appellant point out that there was any variance between the description in the contract and the deed. At the trial he tendered his instruction No. 1 which was given by the court. This instruction sets forth, in substance, the material allegations of the complaints, and sets forth the following as one of such allegations:

> ". . . that in consideration of the payment of said money by plaintiff to the defendants, the plaintiff was to receive deeds for certain real estate, to-wit: Lots 18 and 19, in Block 6, as marked and laid down on the recorded plat of Calumet Center Second Addition to the City of Hammond, Lake County, Indiana; . . ."

By inadvertence, the appellant omits the word "Second" from "Calumet Center Addition" where such instruction is set forth in his "Statement of the Record" in his brief; and while appellees have approved appellant's "Statement of the Record" as correct, we are not pre-

vented by this fact from examining the record to determine the true language of such instruction.

It is a well-settled rule of appellate procedure, that all questions presented in the appeal must be tried and determined by the record as certified to the appellate tribunal. This rule is one universally affirmed and enforced by our decisions. *Terrell* v. *State* (1905), 165 Ind. 443, 447, 75 N. E. 884; *Burkhart* v. *Ogle* (1891), 126 Ind. 599, 26 N. E. 152. See, also, 3 Am. Jur. § 692, p. 284.

In the case of *Cowger* v. *Land* (1887), 112 Ind. 263, 264, 12 N. E. 96, in considering the scope and extent of its review of the appeal involved, the court says:

"Of course, we consider such questions only as are presented by, or arise under, the errors assigned here by the appellant; but, in the decision of these questions, we explore the entire record, if necessary, in order to arrive at a right conclusion."

But despite this situation, shown by the record, there still exists uncertainty as to whether the real estate described in the deed was the real estate about which the parties contracted. Appellees, in their brief, quite candidly, admits this, for they say: "From this record we cannot say whether the description in the contract was wrong, or that the description in the deed was wrong."

The court, in this instruction, tells the jury that, "the defendants brought into court a deed to the real estate in question." The court is telling the jury that the real estate, as described in the deed, is the real estate about which the parties are litigating.

This instruction also informs the jury that the deed was "a valid tender." A "valid tender" is a "legally sufficient tender." Whether a legally sufficient tender had been made by the appellees was the main question before the jury for determination.

A legally sufficient tender would be a tender that was made under conditions and circumstances that fulfilled the obligations assumed by the appellees in their contracts. To determine this fact, it was necessary for the jury to determine whether the tender was made in a reasonable time after demand. There was conflicting evidence as to when demand was made; the appellant testifying that he made a demand in 1932, while the appellee Frank R. Martin testified that no demand was made until May 15, 1934. In determining whether or not there was a "legally sufficient tender," it was necessary for the jury to consider much other evidence about which there was conflict.

We hold that the giving of this instruction by the trial court was an invasion of a province of the jury and was error of such a nature as requires a reversal of the judgment.

Appellant makes other claims of error, but they do not present matters that would be expected to arise in another trial of the cause; and for this reason we do not consider them.

Because of the error in the giving of instruction No. 5, tendered by appellees and given by the trial court, this judgment is reversed with direction to the trial court to sustain appellant's motion for a new trial.

Curtis, C. J., not participating.

NOTE.—Reported in 33 N. E. (2d) 808.