[No. 8391.  Department Two.  November 12, 1909.]

## O. A. Pattison, *Appellant*, v. Seattle, Renton & Southern Railway Company, *Respondent.*[1]

Release—Fraud in Procuring—Evidence — Question for Jury. There is sufficient evidence of fraud in procuring a release of damages by reason of personal injuries to make a question for the jury, and it is error to grant a nonsuit, where it appears that, as an inducement to the plaintiff's signing a release for the sum of "$600 and treatment till cured of this trouble by N., medical gymnast," two of the defendant's doctors advised him to take the treatment and represented that he would be cured and that his injuries were slight, that he relied thereon, and that his injuries were much more serious than represented and he could not be cured by the treatment; and that N., while treating him for the defendant, urged him to make the settlement because he would soon be well, notwithstanding that such advice may have been matter of expert opinion, and not intentionally false.

Appeal from a judgment of the superior court for King county, Ronald, J., entered July 7, 1909, upon granting a nonsuit at the close of plaintiff's case, after a trial before a jury, in an action for personal injuries.   Reversed.

*Robert A. Devers, Hastings & Stedman,* and *Milo A. Root,* for appellant.   The confidential relationship of physician and patient justified appellant in relying upon the representations made by the physicians.   Having been thus misled by defendant's physicians, appellant is not bound by the "release."   *Bjorklund v. Seattle Elec. Co.,* 35 Wash. 439, 77 Pac. 727; *Houston etc. R. Co. v. Brown* (Tex. Civ. App.), 69 S. W. 651; *Great Northern R. Co. v. Fowler,* 136 Fed. 118; *Lumley v. Wabash R. Co.,* 76 Fed. 66; *International & G. N. R. Co. v. Shuford,* 36 Tex. Civ. App. 251, 81 S. W. 1189; *Fleming v. Brooklyn Heights R. Co.,* 88 N. Y. Supp. 732; *Culbertson v. Blanchard,* 79 Tex. 482, 15 S. W. 700; *Pendarvis v. Gray,* 41 Tex. 326; *Peterson v. Chicago, M. &*

[1]Reported in 104 Pac. 825.

*St. P. R. Co.*, 38 Minn. 511, 39 N. W. 485; *Woodbury v. Woodbury*, 141 Mass. 329, 5 N. E. 275, 55 Am. Rep. 479; *Bliss v. New York etc. R. Co.*, 160 Mass. 447, 36 N. E. 65, 39 Am. St. 504; 9 Cyc. 456-458, and cases cited; Pomeroy Equity Jurisprudence, §§ 956, 963. It was not necessary to the maintenance of this action that the representations of the doctors should have been knowingly false. *Lawson v. Vernon*, 38 Wash. 422, 80 Pac. 559, 107 Am. St. 880; *West v. Carter*, 54 Wash. 236, 103 Pac. 21; *Sears v. Stinson*, 3 Wash. 615, 29 Pac. 205; *Daniel v. Glidden*, 38 Wash. 556, 80 Pac. 811; *McMullen v. Rousseau*, 40 Wash. 497, 82 Pac. 883; *O'Connor v. Lighthizer*, 34 Wash. 152, 75 Pac. 643; *Hanson v. Tompkins*, 2 Wash. 508, 27 Pac. 73; *Gillully v. Hosford*, 45 Wash. 594, 88 Pac. 1027; *Lumley v. Wabash R. Co.*, 76 Fed. 66. Whether the representations of the physicians amounted to a fraud upon appellant and whether they were knowingly false, or relied upon, was for the jury. 14 Am. & Eng. Ency. Law (2d ed.), pp. 24, 88, 120, 121, 194; 29 *Id.* 654-7; *Westby v. Washington Brick, Lime & Mfg. Co.*, 40 Wash. 289, 82 Pac. 271; *Bjorklund v. Seattle Elec. Co.*, 35 Wash. 439, 77 Pac. 727; *Sanford v. Royal Ins. Co.*, 11 Wash. 653, 40 Pac. 609; *Strand v. Griffith*, 97 Fed. 854; *Noyes v. Belding*, 5 S. D. 603, 59 N. W. 1069; *Watson v. Molden*, 10 Idaho 570, 79 Pac. 503, and cases above cited. The doctrine that one may deceive another and then urge that the victim should not have been deceived thereby, is not looked upon with favor. *Wooddy v. Benton Water Co.*, 54 Wash. 124, 102 Pac. 1054; *Stone v. Moody*, 41 Wash. 680, 84 Pac. 617, 5 L. R. A. (N. S.) 799; *Curtley v. Security Sav. Society*, 46 Wash. 50, 89 Pac. 180; *Hanson v. Tompkins*, 2 Wash. 508, 27 Pac. 73; *Landis v. Wintermute*, 40 Wash. 673, 82 Pac. 100.

*Morris B. Sachs*, for respondent, contended, among other things, that a voluntary release acquiesced in for two years should not be set aside. *Groenendyke v. Coffeen*, 109 Ill. 325; *Valentine v. Wysor*, 123 Ind. 47, 23 N. E. 1076, 7

L. R. A. 788; *Yeamans v. James,* 29 Kan. 373; *Swayze v. Swayze,* 37 N. J. Eq. 180; *Fraser v. Hext,* 2 Strobh. Eq. (S. C.) 250; *Kercheval v. Doty,* 31 Wis. 476; *Strong v. Strong,* 102 N. Y. 69, 5 N. E. 799; *Johnston v. Furnier,* 69 Pa. St. 449. A compromise will not be set aside where both parties had or could have had equal knowledge of the facts. *Smith v. Paris,* 53 Mo. 274; *Carlisle v. Barker,* 57 Ala. 267; *Motley v. Motley,* 45 Ala. 555; *Otto v. Long,* 127 Cal. 471, 59 Pac. 895; *Pattison v. Albany Bldg. & Loan Association,* 63 Ga. 373; *Harrison v. Dewey,* 46 Mich. 173, 9 N. W. 152; *Judd v. Blake & McIntyre,* 14 Vt. 410; *Hennessy v. Bacon,* 137 U. S. 78, 34 L. Ed. 605; *Hager v. Thomson,* 1 Black (U. S.) 80; 17 L. Ed. 41; *Massachusetts Mut. Life Ins. Co. v. Hayes,* 21 Ill. App. 258; *Durkee v. Stringham,* 8 Wis. 1. The statements of the physicians were opinions. *Nelson v. Minneapolis St. R. Co.,* 61 Minn. 167, 63 N. W. 486.

PARKER, J.—This action was brought to recover damages for personal injuries alleged to have been sustained by plaintiff in a collision upon defendant's railway, on August 5, 1906, while riding as a passenger in one of its cars, resulting from the negligent operation of the cars. Damages in the sum of $5,000 is claimed by plaintiff, for which he prays judgment against the defendant, less the sum of $600, which he acknowledges to have been paid by defendant.

In its answer, after denying the allegations of the complaint as to the cause and extent of the injuries, the defendant, as an affirmative defense, alleges in substance, that on the 3d day of October, 1906, plaintiff executed and delivered to it a release of all claims for damages on account of said injuries, wherein the consideration is recited as being, "The sum of $600 and treatment till cured of this trouble by C. L. Norbom, medical gymnast."

Replying to this affirmative defense, plaintiff alleges, in substance, that after the injury defendant sent to plaintiff a physician and said Norbom, medical gymnast, who examined plaintiff as to the nature and extent of his injury, and

advised him that his injury was not of a serious nature, and would not prove permanent; that they could and would effect a cure within six months; that plaintiff's only loss by reason of the injury would be the loss of his time during the period necessary to effect a cure; that, at the time of signing the release, plaintiff did not know the extent or nature of his injury, and had no means of knowing the same other than through the statements of said physician and gymnast; that he believed such statements to be true, and relying thereon he signed the release; that the statements and representations as to the extent and nature of his injury were not true, and were made for the purpose of inducing plaintiff to sign the release; the plaintiff took treatment of said Norbom as directed by defendant, and until said Norbom advised him that he could not be cured, and that his injury would prove permanent; that the sum of $600 was received by him upon these conditions only, that said sum is grossly inadequate to compensate him for his injury, and that said sum was not accepted in full for the injury and damages actually sustained, but upon the statements and misrepresentations of said physician and medical gymnast acting in behalf of defendant. The cause proceeded to trial before the court and a jury. Upon the close of the evidence, counsel for defendant moved for a nonsuit, which was granted, the cause dismissed and the jury discharged; from which disposition of the case plaintiff has appealed to this court.

As we understand the contention of counsel for the respective parties, there is no question raised as to the sufficiency of the evidence to carry the cause to the jury upon the merits, the arguments in the briefs of both parties being directed only to the sufficiency of the evidence to require submission to the jury on the question of whether or not the release set up as a defense was procured by misrepresentation and fraud. It was evidently upon the theory that there was not sufficient evidence to support a finding in appellant's favor upon this question that the learned trial court took

the cause from the jury and decided, as a matter of law, that the release was not procured by fraud.

There is evidence tending to show, that the first physician who called upon and treated appellant after the accident, for the injuries there received, was Dr. Guthrie, one of the regular surgeons of respondent, and who had also on occasions prior thereto rendered medical services to appellant's family, but whether or not he was then called at the instance of the respondent is not shown; that he called upon appellant five or six times professionally; that about three weeks after the accident, upon the recommendation of Dr. Guthrie, appellant commenced taking treatment from C. L. Norbom, medical gymnast, whose treatments continued at frequent intervals for more than a year, that appellant paid Norbom for the first two or three treatments, while repondent paid for all subsequent ones, amounting to over $700; that this was in accordance with an arrangement made with Norbom by the respondent prior to the signing of the release. Among other testimony of appellant is the following:

"Q. State whether or not you continued the treatment with Dr. Norbom right along up to the time of the release. A. Yes, and afterwards. Q. Now, during that time state whether or not you made apparently progress toward getting improved. A. On the start I did improve very rapidly and Dr. Norbom told me that the best thing for me to do was to get settlement with the company as soon as possible because I would get well before long. . . Q. State what the Dr. said as to your condition, and whether you were going to get well speedily. A. He stated that ordinarily those cases would take from thirty to sixty days. Q. State whether or not you relied upon these statements that he made. A. I did, implicitly, sure. He is the only man I had to rely on, except Dr. Shannon. Dr. Shannon said I would get well. . . Q. Who is Dr. Shannon? A. Well, one of the company's physicians. Q. Did he treat you? A. Not for treatment—for examination. Q. When did Dr. Shannon make this statement, as to the time of signing the release, before the signing? A. Before the signing of the release. That was some days before the signing of the release. . . Q. You may state

to the jury what was the chief inducement to you to sign that release?  A.  Dr. Norbom's statement. . . Dr. Norbom told me more than once that I would get well.  He was the man that was treating me.  He was the only man that I had to rely on.  I relied implicitly upon what he told me. . .  Q.  What did he say to you?  A.  He said that I had better settle with the company.  That there was no bones broken, and nothing to show for an injury after I got well. . .  Q.· Now was there anybody else that you went to in regard to these injuries?  A.  Shannon.  Q.  And you went there at the request of defendant?  A.  Yes."

It is clear that there was sufficient evidence to warrant the conclusion that Dr. Guthrie was one of the regular physicians of the respondent when he attended appellant and advised him to go to Norbom, the medical gymnast, for treatment, though he might also be regarded as appellant's family physician at the same time.  It is also clear that the evidence would support the conclusion that Dr. Shannon was one of respondent's physicians at the time of the statement testified to by appellant above quoted.  The evidence of the relation of Norbom to the respondent at the time of advising settlement is not very satisfactory.  Appellant testified that there was an arrangement between the claim agent of respondent and himself by which Norbom was to treat him at respondent's expense, before Norbom advised the settlement. Appellant was not present when the arrangement was made between Norbom and respondent; but his testimony is to the effect that the claim agent gave him to understand such arrangement had been made.  That Norbom was treating appellant at the instance and expense of respondent, at the time of the release and after, is indicated by the words of the release, and the payment of Norbom by respondent.  There was sufficient evidence for the jury's consideration tending to show that appellant's injuries were very much more serious than stated by Norbom and Dr. Shannon to appellant, which he testified induced him to sign the release, and that the $600 paid appellant upon the release was not adequate compensation therefor, and that appellant relied upon the state-

ments of Norbom and Dr. Shannon as to the extent of his injuries at and prior to the signing of the release.

The principal contention of learned counsel for respondent seems to be that there was not sufficient evidence to go to the jury showing Norbom's relation to and employment by respondent at the time the statements are claimed to have been made by him, inducing appellant to make the settlement, and therefore respondent could not be held liable for any such statements. We also understand from the remarks of the learned trial judge, shown by the record, that this was the principal reason for granting the nonsuit. In view of the recommendation of Norbom by Dr. Guthrie, the respondent's physician, though he may also have been appellant's physician, the testimony as to the arrangements for Norbom's treatment for appellant, and all the circumstances shown, we think it was for the jury to determine when Norbom first began treating appellant at the instance of respondent, and as to whether or not the statements relied upon by appellant were made by Norbom after he was employed by respondent.

It is further contended in behalf of respondent, that the statements made by Norbom, which are claimed to have induced the settlement, must have been then known by him to be untrue, and something more than his opinion as to appellant's condition and when he would recover, in order to entitle appellant to avoid the release. In the case of *Houston & T. C. R. Co. v. Brown* (Tex. Civ. App.), 69 S. W. 651, the court uses this language:

"We cannot agree with the contention of appellant that it may escape liability on the ground that the representations and statements made by Stewart was a mere expression of opinion. It was more than an opinion,—it was the statement of a fact. The effect of his statement was that the appellee was a sound man, and that the bones of his arms had knitted together, and that it would be all right. It is true this statement may have been predicated upon his opinion as a medical expert, but the opinion is based upon facts

of which he possessed knowledge. The fact that the statement made by Stewart was not intentionally false does not affect the right of the appellee to have the release set aside if he was misled by the statement, and executed the release believing the statement was true. In such a case, innocent misrepresentations may as well be the basis of relief as where such statements are intentionally false."

It is true, in this case, that the statements of Norbom may in a sense be regarded as an expression of his opinion touching the future recovery of appellant, but the unqualified manner in which they were made, coupled with the urgent recommendation for settlement, rendered them as effectual in inducing appellant to make the settlement and sign the release as if they had been false statements touching the present physical condition of broken bones. We think the fact that Norbom may have unintentionally misrepresented to appellant his true condition at the time would not, of itself, prevent the avoidance of the release, if as a matter of fact such representations were untrue, were made in the interest of respondent, and did induce appellant to sign release. This was for the jury to determine under all the circumstances shown by the evidence.

We conclude that the learned trial court was in error in taking the cause from the jury. The judgment is reversed, with directions to grant appellant's motion for a new trial.

CROW, DUNBAR, and MOUNT, JJ., concur.