[No. 28345. Department Two. September 16, 1941.]

JAMES F. SIMMONS, *Respondent*, v. MORRIS KALIN, *Appellant*.[1]

[1]Reported in 116 P. (2d) 840.

410

*Williams, Williams & Cooney,* for appellant.

*Justin C. Maloney,* for respondent.

MILLARD, J.—This action was instituted by plaintiff, a pedestrian, to recover for injuries alleged to have been sustained by him, about seven p. m., February 6, 1940, as the result of being struck by a sedan automobile, operated by defendant, as plaintiff was traversing the intersection of Trent avenue and Division street, in the city of Spokane. By answer, defendant denied negligence, and pleaded in bar of the action affirmative defenses of contributory negligence and a release executed by plaintiff in consideration of the payment of one hundred dollars. By reply, plaintiff denied the allegation of contributory negligence, and alleged that the release of the claim for personal injuries was obtained from him by defendant's false representations that plaintiff had not sustained any injury, and that X-ray pictures had been taken which disclosed that plaintiff had not sustained any injury.

Trial of the cause to a jury resulted in verdict for twenty-eight hundred dollars in favor of plaintiff. Judgment for that amount, less one hundred dollars paid by defendant to plaintiff for release, was entered. Defendant appealed.

Counsel for appellant contend that the trial court should have sustained the challenge to the sufficiency of the evidence or granted the motion for judgment *non obstante veredicto,* as there was neither evidence nor reasonable inference from evidence that misrepresentations of appellant induced respondent to execute the release.

The rule is that all competent evidence in the record which is favorable to the respondent must be regarded as true; and that the respondent must be given the benefit of every favorable inference, which may reasonably be drawn from such evidence; that, where the minds of reasonable men may differ, the question should be submitted to the jury; and that, if, when so considered, the court finds there is substantial evidence to sustain the verdict, the judgment must be affirmed.

That the court did not err in submitting to the jury the question whether respondent's release of his claim for personal injuries was executed in reliance on misrepresentations of appellant as to the nature or extent of the injuries, is clear from an examination of the facts, which are summarized as follows:

Trent avenue, which runs in an easterly-westerly direction, and Division street, the course of which is northerly and southerly, intersect each other at right angles in the city of Spokane. There are regularly marked pedestrian lanes at that intersection about ten feet wide and designated by white enclosing lines. Automatic traffic light signals are installed at that intersection and were functioning about seven p. m., February 6, 1940, when respondent, who was walking east on the north side of Trent avenue in a pedestrian lane of the intersection with the green light in his favor giving him the right to proceed, was struck by a sedan automobile operated by appellant. There is ample evidence to sustain the verdict that appellant's negligence was the proximate cause of the accident and that respondent was not guilty of contributory negligence.

Respondent was removed to a hospital. The steward who made an examination and discovered a bruised portion on respondent's back, prescribed the applica-

tion of hot packs. The respondent was then assisted to dress and taken in a city automobile to his home and assisted out of that vehicle and into his house. The following day, one of the attorneys for appellant called upon respondent and advised him that he was representing appellant, and that that attorney was the person for respondent to see if he desired to present a claim for his injuries. That attorney gave to respondent a note on which the attorney's name, address, and phone number were written.

Shortly thereafter, respondent called at the office of that attorney, who advised respondent that, if a settlement was to be made, it would be necessary for respondent to be examined by a physician, so that appellant and his attorney would both know the extent of respondent's injuries. On February 10, 1940, at request of appellant's attorney, respondent called at the office of Dr. D. H. Lewis, a physician selected by appellant for that purpose, who made a physical examination and took X-ray pictures of respondent. Dr. Lewis transmitted to appellant's attorney a written report, together with the X-ray pictures, of the result of his examination.

Respondent again called at the office of that same attorney of appellant, and that attorney advised respondent that the written report of the physician had not yet been received, but that the attorney had discussed the matter over the telephone with Dr. Lewis, and the doctor had advised that the examination disclosed that there was nothing wrong with respondent. Subsequently the written report was received and was discussed by the attorney with respondent. No part of the report was ever read to respondent. The attorney advised respondent that it was necessary to send the report to the company (which would make the settlement for appellant), and that respondent

would be informed as soon as the attorney received word from the company.

Several times up to February 19, 1940, at his invitation, respondent called at the office of appellant's attorney, and the topic of discussion was the injuries of respondent. At all times, that attorney had the physician's report, or a copy of that report, of the result of the physician's examination of respondent. A number of times, the attorney advised respondent that that report and the X-ray pictures disclosed there were no broken bones or fractures, and that there was nothing wrong with respondent. On February 19, 1940, when respondent called at the office of that attorney of appellant and was advised that that attorney had heard from the company, respondent was taken by that attorney to the office of another attorney of appellant for settlement of the claim. This second attorney advised respondent that, although the physician's report and the X-ray pictures disclosed

" . . . there is nothing wrong, but to make it short we will give you $100 for a settlement, because it shows there is nothing wrong with you."

Respondent departed from that office, to which he returned very shortly thereafter and accepted the offer, stating that if there was nothing wrong with him he would be all right in a couple of months and he would take the check. A check in the amount of one hundred dollars was given to respondent, and the release which had been prepared by appellant's attorneys was signed by respondent.

During all of this time, respondent never consulted an attorney. During this period, respondent had called on one of the county physicians because of the pain he was suffering, but a complete examination was not made of respondent to determine the extent of his injuries. The only advice given to him was to continue the application of hot packs. Respondent had

not had X-ray pictures taken of the injured portion of his spine. He had no report in writing respecting his injuries, nor was the report of Dr. Lewis or the X-ray pictures, in the possession of appellant's attorneys, ever shown or read to him.

Prior to February 6, 1940, respondent had not sustained any injury to his back, nor had there been any spinal condition which prevented him from engaging in ordinary manual labor. Before the date of his injury, he had consulted the members of the county physician's staff nineteen times from December 27, 1937, to February 1, 1940, solely for the purpose of determining, in connection with the county welfare department work, whether respondent was employable. He was not given medical treatment at those times by those physicians. When examined January 9, 1940, by a county physician, respondent was found to be employable for light work.

Since the injury, respondent has suffered to some extent at all times. The normal strength of his back has departed, and there has been a diminution of his ability to walk. He can perform only very light work and that with periodic and extended rest periods. At the time of his injury, he was sixty-two years of age and had a life expectancy of almost thirteen years. He is permanently disabled by reason of the compression fracture of his spine. This is progressive in nature and will continue to progress for a period of time.

In May, 1940, Dr. Luger, an assistant county physician, caused some X rays to be taken of respondent's back. Those pictures disclosed that respondent had a compression fracture of one of the dorsal vertebrae. The injury to respondent's spine, the assistant county physician attributed to the automobile accident of February 6, 1940. That is, the physician testified that it was his opinion the compression fracture was due

to the injury received by respondent when he was struck by appellant's automobile. This action was promptly instituted, following Dr. Luger's examination, which disclosed respondent was suffering from fracture of the spine.

Some point is made by appellant of the mental ability of respondent—that "He was an educated man and had been educated in both law and medicine . . . He was familiar with the rights of individuals injured through the fault of others,"—in the argument that appellant was not guilty of overreaching. The testimony of respondent that he attended high school about three months, that he attended medical school three or four months, and that he knew a little about a dozen different languages, must be viewed in the light of all of the evidence. This sixty-two or three year old man was an ordinary laborer, who was, so appellant's medical expert testified, "far more senile than his years."

Dr. Lewis, to whose report of the result of the physical examination of respondent by direction of appellant's attorney we have referred above, testified that he examined respondent February 10, 1940, at the request of appellant's attorneys, which testimony in substance is as follows:

Respondent, an ordinary laborer, who appears to be older than his age of sixty-three years, stated to this physician he could not stoop without a spasm of the back muscles at about the level of the eighth thoracic to the third lumbar. Dr. Lewis found no abrasions or contusions anywhere on the body or limbs of respondent.

"The X-ray of the anterior-posterior and lateral views of the mid and lower dorsal and lumbar spine reveal a compression deformity of the seventh dorsal vertebra. That is the vertebra that is about half way down. There is extensive and pronounced generalized

decalcification of all the vertebrae and the ribs. Under the circumstances it is impossible to say how old the compression deformity may be or what the cause of it may have been. It is possible for it to have been secondary to a degenerative process. Q. In this examination what were you particularly endeavoring to determine? A. Well, just making a general examination. Then when he complained of this pain in the back where he had been hit I had my X-rays taken. Q. What did your examination have to do, if at all, with the determination of the extent, if at all, to which he was injured through this accident? A. Well, he complained of being hit in the back, and pain in the back, and naturally, that is the point, after I gave my general examination—I was looking for black and blue spots, bruises, scratches, anything abnormal, a fractured rib, and so forth—and I found none. Q. Before the X-ray, you mean. State to what extent you examined him. Without the benefit of an X-ray, were there any contusions? A. No sir, there were none. Q. Now, Doctor, I wish you would go on with the results of your examination from the place where I stopped you. A. . . . First of all, we have an old man, *far more senile than his years,* unkept, poorly fed and poor habits. His bones and particularly the vertebrae are less calcified far more than usually, so that they are much less brittle. In other words, the older we get, the more brittle, and in this man, his bones are less brittle than they should have been. It is impossible to say just when he received this compression of the seventh vertebra. There are no fracture lines visible, and the surrounding bone looks like a very old trauma. It is impossible for me to figure a compression of this type due to the kind of accident which he describes. A direct blow posteriorly causing this sort of compression would necessarily also cause some deep contusions of the soft tissue. Such was not present in my examination four days following the accident. I know of no treatment except possibly a supporting belt which would do him any good. Any hyperextension treatment in my estimation would be of no avail, for I do not believe that any of the vertebrae above or below the seventh dorsal could be budged out of

their present position. Then, too, there are no symptoms showing any pressure on the cord or vertebral nerves. I think time and ordinary care will effect as good a result as any radical treatment." (Italics ours.)

The argument that, because Dr. Luger did not examine the X-ray pictures taken by Dr. Lewis and did not testify concerning those pictures, respondent did not sustain the burden imposed upon him, is without substantial merit.

Dr. Lewis reported orally and in writing to appellant's attorney as to what he found in his examination of respondent, but appellant did not convey to respondent the contents of the reports of that physician. Appellant's attorney never mentioned to respondent that portion of the physician's report to the effect that respondent was suffering from a compression fracture of his vertebra but that it was impossible for him, the physician, to conclude that the fracture was the result of the automobile accident.

The conclusion of Dr. Lewis that, if the injury were due to the accident, deep contusions of the soft tissue would be present, should be considered in the light of the hospital record that, at the time very shortly following the accident, an examination of respondent disclosed a contusion on respondent's back. It was within the province of the jury to believe or disbelieve that portion of the testimony of Dr. Lewis. The jury chose to accept the testimony of Dr. Luger that the fracture was caused by the accident, which is sustained by the hospital record and the reasonable inferences from other evidence.

It should be borne in mind that appellant's attorney admitted that he did not mention to respondent any of the portions of the report that respondent had suffered a compression fracture of his vertebra. Appellant's attorneys represented to respondent that

Dr. Lewis found no injury, which representation was false. In reliance on the representations of appellant's attorneys, respondent signed the release. The representations were as to statements of fact, and not of opinion of the attorneys, or the opinion of any one else.

"It is well settled that a release of a claim for personal injuries may be avoided if it is executed in reliance on misrepresentations as to the nature or extent of the injuries, amounting to fraud on the part of the releasee, its agent, or physician. Where the professional opinion relied on to avoid a release is not given directly by the physician to the patient, but is communicated to him by a third person as a claim agent of the releasee, it is the duty of the agent to repeat the opinion with entire correctness; and if the person responsible for the injury, or the agent, falsely represents to the releasor what a physician or surgeon thinks or has said about his injuries, it is a fraud which will justify the rescission of a release executed on such false statement. The same is true if the claim agent from outside sources, as from the opinion of other physicians, has reason to believe that the injuries are serious, but induces the injured party to execute a release in reliance on the opinion of the releasee's physician that they are only slight and temporary." 48 A. L. R., 1486-1489.

In *Pierce v. Seattle Electric Co.*, 78 Wash. 167, 138 Pac. 666, the plaintiff and her daughter testified that plaintiff, who was seriously injured, relied upon the statement of the company's physician, who had been treating her, that she would be well within two weeks, and of the claim agents that five hundred dollars then paid would be considered as paid on account if she was not well within two weeks. The release was not read to the plaintiff and she was unable to read it or sign it without assistance. On the question whether fraud in securing the release was established by clear and convincing evidence, we said:

"In cases of this kind, the rule appears to be that, where a party claims there was fraud or overreaching in the settlement, the burden is upon the one making the charge to sustain it by evidence which is clear and convincing. . . .

"In this case, if the evidence of the plaintiff and her daughter is to be believed, then there was sufficient evidence on this question to sustain the verdict of the jury. Where the evidence is conflicting, and the evidence offered on the part of the plaintiff is sufficient if believed by the jury to sustain the charge of fraud, the question is for the jury to determine. It is not the province of this court to weigh the conflicting evidence and determine the question *de novo*. The court can only inquire as to whether, if the evidence were undisputed, it could be said to be clear and convincing."

If the testimony of respondent is true—his credibility was for the jury—the release of his claim for personal injuries was executed in reliance on misrepresentations by appellant's attorneys as to the extent of respondent's injuries. Whether respondent was induced to sign the release through fraud, was a question of fact for the jury. There is competent evidence tending to prove the fraud, and it is inferable from the testimony of Dr. Lewis, despite other evidence in the record that respondent was competent, that respondent was not mentally capable of dealing with appellant's attorneys. Whether the evidence was convincing or unconvincing, it was not for the court to pass upon the matter of fraud on the part of the releasee as a question of law.

"We think, however, that the rule invoked has been somewhat misunderstood. It is not meant by this language that the court shall pass upon the credibility of witnesses, or must be convinced that they are telling the truth, before submitting the issue to the jury. The evidence must be clear and convincing, assuming it to be true; that is, it must be substantial,

and, if true, well calculated to prove the allegation." *Myers v. Weyerhaeuser,* 197 Wash. 407, 85 P. (2d) 1091.

See, also, *St. Louis-San Francisco R. Co. v. Cauthen,* 112 Okla. 256, 241 Pac. 188, 48 A. L. R. 1447. One of the affirmative defenses in that action, the purpose of which was to recover for injuries sustained by plaintiff in the course of his employment, was the execution of a release. When plaintiff was first discharged from the hospital, he was advised by the physicians and surgeons in charge of his case that his injury was not of a permanent nature and that he would fully recover, and after his return home, and at the time the settlement upon which defendant relied was made, plaintiff apparently had completely recovered. Subsequently, and after he returned to work, it was ascertained that he was suffering from a process of absorption of the hip, by reason of which plaintiff was permanently disabled. In affirming judgment in favor of plaintiff, the court held that an innocent misrepresentation by the releasee of a material fact, intended to be acted on by the releasor and relied upon by him, is effective to avoid a release induced thereby.

Respondent sustained the burden of proof that he was induced by the misrepresentations of appellant's attorneys to sign the release of his claim for personal injuries. Dr. Lewis knew, and appellant's attorneys were fully informed, that respondent was suffering from a compression fracture of his spine. That information was never conveyed by appellant's attorneys to respondent; in fact, they misrepresented the contents of the report of Dr. Lewis.

Error is next assigned on the refusal of the trial court to admit in evidence the written report made by Dr. Lewis to appellant's attorneys. The assignment is without merit. The testimony of Dr. Lewis

as to the contents of the report differs in no essential particular from the report; in fact, the testimony is practically a copy of the report, which, it would appear, was read in evidence by Dr. Lewis. That report had no probative value, as it shows nothing more than what is already in the record. The contention of counsel for appellant that the report shows upon what appellant's attorneys relied when making the representations to induce respondent to execute the release, is not tenable. It is admitted that appellant's attorneys never showed or read the report to respondent, and it is conclusively shown that the important portions of that report were never stated to respondent.

Counsel for appellant contend that the jury should not have been permitted to consider the fact that, at the time of making the settlement, respondent did not have the benefit of medical and legal advice. Error is also assigned on refusal of the court to withdraw from consideration of the jury the fact that respondent did not read the release and it was not read to him.

The foregoing assignments of error, which are based upon instructions given by the trial court, are not entitled to consideration, for the reason that appellant failed to comply with the rule of this court which requires that, where an objection is based on an instruction of the court, the instruction shall be set forth in the brief in full. *Lund v. Seattle,* 163 Wash. 254, 1 P. (2d) 301; *Scott v. Pacific Power & Light Co.,* 178 Wash. 647, 35 P. (2d) 749; *Walker v. Copeland,* 193 Wash. 1, 74 P. (2d) 469.

However, it clearly appears from a reading of all the instructions that the jury was clearly and correctly charged under the pleadings and the evidence. Specifically, the court instructed the jury that the fact, if found to be a fact, that respondent did not have the

benefit of legal or medical advice, at the time of signing the release, would not of itself constitute fraud. The court further instructed the jury that, if it found that respondent could read, the fact, if found to be a fact, that the release was not read by or to respondent before he signed the release would not of itself be any evidence of fraud, as the law requires every person to use reasonable diligence for his own protection. The jury was fully, correctly instructed as to the duty and obligation of respondent.

 Error is assigned on the giving of instruction No. 8 on the question of respondent's contributory negligence. That instruction, read, as it must be, in connection with the other instructions given, properly defines the duty of respondent and appellant in the matter of traversing a street intersection. The instructions given are, in principle, the same as the instructions approved in *Gable v. Field,* 189 Wash. 526, 66 P. (2d) 356.

 The assignments of error on refusal of the trial court to give other requested instructions are without merit, as they were given in substance in other instructions in so far as the evidence of the case calls for instructions upon the matter requested. *Barrett v. Powers,* 158 Wash. 270, 290 Pac. 816.

 Appellant contends that the verdict is excessive. The jury was properly instructed as to the awarding of damages to compensate respondent, who is permanently disabled and has a life expectancy of almost thirteen years, for the injuries he sustained.

The court will not set aside a verdict merely because it may differ in opinion from the jury as to the proper award to be made. Before the court may interfere, it must be found that the verdict is so far inadequate, or so grossly excessive, as to be without support in the evidence, or it must appear that the verdict was

the result of some extrinsic consideration such as bias, passion, prejudice, or the like. In the case before us, we find nothing of this sort.

There are other contentions—a discussion of which would unjustifiably extend this opinion—all of which have been considered, and, in our view, they are without substantial merit.

The judgment is affirmed.

ROBINSON, C. J., SIMPSON, JEFFERS, and DRIVER, JJ., concur.

[1]Reported in 116 P. (2d) 827.