[No. 37712.   Department Two.   December 23, 1965.]

JOSEPH E. BEAVER, *Respondent*, v. ESTATE OF URBAN HARRIS et al., *Appellants*.*

*Guttormsen, Scholfield, Willits & Ager,* for appellants.

*J. Morrison MacDonald,* for respondent.

BRADFORD, J.†—Plaintiff (respondent) brought this action against Urban Harris and Marjorie Harris, his wife, for personal injuries received in an automobile accident. Urban Harris has since died and his estate substituted as defendant. For convenience, we will refer to the parties as plaintiff and defendant. The defendant answered and alleged contributory negligence and, as a second affirmative defense, a settlement contract with the plaintiff wherein the plaintiff received $1,750 for a full, complete and final re-

*Reported in 409 P.2d 143.

†Judge Bradford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

lease of the defendant for all injuries known and unknown sustained in the accident. Plaintiff presented his case on the theory there had been a mutual mistake of a material fact and the release should be rescinded. The defendant contended the release was valid and a complete defense, and the court should have determined this as a matter of law.

The primary question raised by this appeal is, can a person who has been injured in an accident caused by another's negligence rescind or set aside a general release and bring an action for damages where there is no allegation or proof of fraud, overreaching, questionable conduct, misrepresentation or any indication of incapacity of the party signing the release?

The facts are that on May 22, 1962, plaintiff was driving his automobile in a southerly direction along Aurora Avenue in Seattle. Urban Harris, at the same time, drove his car from the east side of the street to a traffic channel in the center of Aurora, stopped, and then started on across. There is a dispute as to whether the cars actually made contact. The plaintiff swerved to avoid the defendant driver, left the road, glanced off a pole, jumped the curb and ended up against a concrete abutment. The weather was misty and the pavement was wet. The plaintiff's face was bleeding and he seemed badly shaken. The plaintiff called his doctor, Virgel Anderson, on the evening of the accident and the doctor prescribed muscle relaxants, pain killers and equanil. Plaintiff complained of headaches, painful cervical spine, and pain through his low back area.

Plaintiff was a transit bus operator. Dr. Anderson had previously treated plaintiff for a low back injury received in adjusting the seat of a bus he was driving. This was established as an injury covered by industrial insurance and plaintiff was off work about 3 weeks in February of 1962.

Plaintiff consulted regularly with his doctor from the date of the accident until he was discharged to return to work on June 20, 1962. Les Winder, an adjuster for defendant's

insurance company, first contacted the plaintiff on May 23, 1962. He and the plaintiff had six or seven talks between this date and June 14, when plaintiff signed a settlement and release, receiving a check for $1,750. The release reads as follows:

### RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of a draft in the sum of One thousand seven hundred fifty and 00/100 - Dollars ($1750.00), the receipt of which is hereby acknowledged, I/we, being of lawful age, do hereby release, acquit and forever discharge Urban Harris of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known AND UNKNOWN personal injuries and property damage resulting or to result from accident that occurred on or about the 22 day of May, 1962, at or near 11111 Aurora Ave. North in Seattle, Washington. This release does not include the subrogation interest of the Allstate Insurance Co.

I/we hereby declare and represent that the injuries sustained are permanent and progressive and that recovery therefrom is uncertain and indefinite, and in making this release and agreement it is understood and agreed that I/we rely wholly upon my/our own judgment, belief and knowledge of the nature, extent and duration of said injuries, and that I/we have not been influenced to any extent whatever in making this release by any representations or statements regarding said injuries, or regarding any other matters, made by the persons, firms or corporations who are hereby released, or by any person or persons representing him or them, or by any physician or surgeon by him or them employed.

It is further understood and agreed that this settlement is the COMPROMISE OF A DOUBTFUL AND DISPUTED CLAIM, and that the payment is not to be construed as an admission of liability on the part of Urban Harris, by whom liability is expressly denied.

This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractural and not a mere recital.

I/we further state that being of lawful age and legally competent to execute the foregoing release, have signed

the same as my/our own free act and before doing so have fully informed myself/ourselves of its contents by reading the same or having it read to me/us.

In Witness Whereof, I have hereunto set my hand Fourteenth, this 14th day of June, 1962, at Seattle, in King County, Wash.

Caution! Read Before Signing
[signed] Joseph E. Beaver

Before me, Leah E. Hipp, a Notary Public for and within the County of King, State of Washington, personally appeared the above mentioned Joseph E. Beaver to me known to be the person named in and who executed the foregoing release claim and acknowledged that he executed the same as his free act and deed.

(SEAL)                    [signed] Leah E. Hipp
                          Notary Public.
                My term expires Jan. 20, 1966

When plaintiff signed the release, he believed he had a strained back. Medical testimony, based on examinations made after August 12, indicated plaintiff had a herniated disc when he settled.

Plaintiff admits: 1. He was examined by no other doctor than his own until after his claim had been settled and the release signed. 2. The only medical information Mr. Winder received came from the plaintiff. 3. Winder made no false or misleading statements to plaintiff. 4. Winder explained to plaintiff the settlement was final and complete. 5. Plaintiff understood the payment was not a partial payment, but a final payment. 6. Prior to settlement, the plaintiff told his doctor he was going to settle his claim although his doctor had not released him for work. 7. He was released for work June 20, 1962.

On August 12, the plaintiff's back pained him to such an extent he was hospitalized and a specialist, Dr. Nofsinger, was consulted and it was determined the plaintiff had a herniated disc, and a laminectomy was performed. Thereafter, the pain recurred and the plaintiff was operated on a second time at the same level and scar tissue pressing against the nerve was removed.

On plaintiff's admittance to the hospital in August, no reference was made in the admission report to the injury received in this automobile accident. Dr. Anderson attributed the hospitalization in the admission report to the original back injury which had already been established with the Department of Labor and Industries.

In a report to the Department of Labor and Industries, Dr. Anderson specifically disclaimed any other cause of plaintiff's back trouble except the claim that had already been established. Plaintiff signed an application to reopen his case with the department in September, 1962, after his first operation. He admitted this application contained false information.

The court submitted the question of unknown injuries to the jury under the following instructions:

Instruction No. 7:

The plaintiff in this case seeks to set aside and have declared null and void a release which he signed and for which he received a payment of $1,750.00. The plaintiff asserts, as a ground for setting aside the release, that his injuries were different than the parties believed them to be at the time he signed the release.

The release provides that it is a release of claim for injuries both known and unknown.

You are instructed that the law will permit a party to a contract to be relieved from the effect thereof if the evidence establishes by a fair preponderance thereof all of the following:

1. That both parties entered into the agreement without knowledge of a material fact (a material fact is a fact of such importance that the parties probably would not have entered into the agreement had they known of it); and

2. The party complaining exercised reasonable care to discover all of the material facts prior to signing the release; and

3. The evidence in this case does not show an intention by the parties to make the agreement binding regardless of the existence of unknown injuries or the existence of injuries different than those known to the parties at the time the release is signed.

Instruction No. 8:

Even though a release expressly covers unknown injuries, it is not a bar to an action if it can be shown that such unknown injuries were in existence and were not within the contemplation of the parties when the settlement was agreed upon.

■ It is a well recognized principle of law that, before a plain, unambiguous instrument can be set aside on the ground of mutual mistake, the evidence must be clear and convincing. *Spratt v. Northern Pac. Ry.*, 90 Wash. 592, 156 Pac. 563 (1916); *Reynolds v. Day*, 93 Wash. 395, 161 Pac. 62 (1916); *Simmons v. Kalin*, 10 Wn.2d 409, 116 P.2d 840 (1941); *Reinhardt v. Wilbur*, 30 N. J. Super. 502, 105 A.2d 415 (1954); *Johnson v. Holbrook*, 302 S.W.2d 608 (Ky. 1957).

The following testimony clearly demonstrates plaintiff's evidence failed to meet the required burden of proof:

Q. Now, Mr. Beaver, at the time that you signed Defendants' Exhibit 10 you knew that it was a release of any and all claims that you might have against Mr. Harris arising out of this accident, did you not? A. Well, now, I didn't read it. I know it was a legal paper and—yes, I would understand it would be something to that effect. He told me it was the standard one that everyone used on a release. Q. And it was a complete and final release, it wasn't just a part payment, you realized that, did you not? A. Yes, that is what I would have understood.

Mr. Winder testified:

Q. This payment that you made to Mr. Beaver of $1650 was that a payment in full of all Mr. Beaver's damages? A. All his personal injury, yes. I don't know about the property damage. Q. I will qualify that to that extent. That was all the damages he suffered as the result of injury you knew at that time. A. Yes. Q. And also included those you expected him to incur? A. Yes. . . . Q. When you settle a case you have to weigh all sorts of factors, do you not? A. Yes. . . . Q. You also included what you expected him to incur and that was based on what the doctor told him and what you knew about this type of injury? A. Yes. . . . Q. Then in addition to these amounts to make the balance of $1650 you allowed Mr. Beaver the sum of $787 as

damages for pain and suffering? A. If the total comes out to $1750, yes. Q. It does. The balance of $787 was what you allowed as pain and suffering. A. Would you repeat that, please? Q. That was given Mr. Beaver in settlement for his damages incurred for his pain and suffering? A. Yes.

■ If releases obtained under the circumstances and facts now before us are to be taken lightly and rescinded, there will be few settlements without litigation. Consequently, many people with relatively small claims will be forced unnecessarily into additional expense and delay. There would be an appreciable increase in the number of personal injury cases presented to the courts for final determination. No one settling a case would be secure from litigation short of the statute of limitations.

Although this specific question has not been directly decided, we have repeatedly emphasized the value of amicable settlements of claims of this character, especially when the settlement has been secured without fraud, misrepresentation or overreaching. *Garver v. Great Northern Ry.*, 56 Wash. 519, 106 Pac. 192 (1910); *Nath v. Oregon R.R. & Nav. Co.*, 72 Wash. 664, 131 Pac. 251 (1913); *Trovik v. Grant Smith & Co.*, 74 Wash. 272, 133 Pac. 454 (1913); *Cortez v. Spokane Int'l Ry.*, 112 Wash. 289, 191 Pac. 820 (1920); *Potter v. Guertze,* 171 N.Y.S.2d 991 (1958).

In *Reynolds v. Day,* 93 Wash. 395, 398, 161 Pac. 62 (1916), the court said:

> Releases of this kind are like any other writing and are not to be lightly overcome. If they are not induced by fraud, false representations, or overreaching, they must be sustained.

When the release contains plain and unambiguous language, parol evidence will not be admitted to vary the release. *Betcher v. Kunz,* 112 Wash. 563, 192 Pac. 955 (1920).

In *Shannon v. Prall,* 115 Wash. 106, 196 Pac. 635 (1921), the appellant sought to enforce against the respondent claims which were apparently included within the terms of a written release contending that the obligation sued upon was not within the minds of the parties at the time the

release was signed. It was held that the appellant was bound by the terms of the release and could not vary those terms by parol evidence.

One of the most recent cases which applied the parol evidence rule to a release for personal injuries was *Schwieger v. Robbins & Co.*, 48 Wn.2d 22, 24, 290 P.2d 984 (1955), where the court said:

> The release is in plain and unambiguous language. We often have said that the courts will not interpret the meaning of unambiguous contracts. *Silen v. Silen*, 44 Wn. (2d) 884, 271 P. (2d) 674 (1954). Neither will the courts permit oral evidence to establish or create an ambiguity in a written contract. *Washington Fish & Oyster Co. v. G. P. Halferty & Co.*, 44 Wn. (2d) 646, 658, 269 P. (2d) 806 (1954), and case cited.

*Buyken v. Ertner*, 33 Wn.2d 334, 205 P.2d 628 (1949).

Conversely, this court has not hesitated to vacate or set aside a release obtained under questionable circumstances. *Simmons v. Kalin*, 10 Wn.2d 409, 116 P.2d 840 (1941).

In *Pattison v. Seattle, Renton & S. R. Ry.*, 55 Wash. 625, 104 Pac. 825 (1909), the treating doctor was in the employ of the defendant and, in addition to an inadequate diagnosis, encouraged the plaintiff to settle and sign a release.

In *Great Northern Ry. v. Reid*, 245 Fed. 86 (9th Cir. 1917), Reid was examined solely by the defendant's doctor who diagnosed his injuries as minor. The court held the release could be set aside.

Mutual mistake is one of the recognized grounds whereby any contract may be set aside or vacated. What constitutes a mutual mistake must be clearly established.

There is ample authority holding a mutual mistake must be one involving both parties, a mistake independently made by each party.

In the case now being considered, the only information of plaintiff's condition was from the plaintiff himself. Defendant had no independent knowledge and he accepted plaintiff's own diagnosis and opinion of his injuries. If there was a mistake, it was a unilateral mistake, rather than a mutual mistake. *Johnson v. Holbrook*, 302 S.W.2d 608 (Ky.

1957); *Gumberts v. Greenberg,* 124 Ind. App. 138, 115 N.E.2d 504 (1953); *Diltz v. Sherrick,* 108 Ohio App. 188, 161 N.E.2d 93 (1958); *Wheeler v. White Rock Bottling Co. of Oregon,* 229 Ore. 360, 366 P.2d 527 (1961); *Randolph v. Ottenstein,* 238 F. Supp. 1011 (1965).

There is an extensive annotation of cases on this subject in 71 A.L.R.2d, beginning at page 82. A careful reading of the majority of the cases allowing rescission clearly shows they are, in most instances, distinguishable from the case now before the court.

In negotiating and settling cases, many matters must be taken into consideration. There are, in all settlements, certain elements of chance and it is common knowledge that few diagnoses and prognoses concerning injuries to the human body can be reduced to mathematical certainty. Here, the plaintiff knew at the time he settled his claim and signed the release his doctor had not discharged him to return to work. He knew he was making a final and complete settlement. However, the evidence indicates he was of the opinion even if he was guessing incorrectly he had a previously established claim with the Department of Labor and Industries for a low back injury. His failure to mention the accident in the history given to Dr. Nofsinger, together with the application to reopen his established claim, and his cooperation with his doctor in keeping any reference to this accident from appearing in the chain of events connected with his hospitalization and operation display in a rather obvious manner the plaintiff was aware he had completely settled with the defendant.

The judgment is reversed and plaintiff's complaint dismissed on the merits.

ROSELLINI, C. J., DONWORTH, WEAVER, and OTT, JJ., concur.